United States Bankruptcy Court

Northern District of California

In re:                                                              Case No. 20-30242-HLB

Anthony Scott Levandowski                                          Chapter 11

    Debtor(s)

# CERTIFICATE OF NOTICE

District/off: 0971-3                    User: lmenendez                    Page 1 of 2

Date Rcvd: Dec 18, 2020                 Form ID: pdfnoa                    Total Noticed: 5

The following symbols are used throughout this certificate:

**Symbol**    **Definition**

+    Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP.

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Dec 20, 2020:**

| Recip ID | | Recipient Name and Address |
|---|---|---|
| aty | + | David J. Bradford, Jenner & Block, LLP, 353 N. Clark Street, Chicago, IL 60654-5474 |
| aty | + | Miles Ehrlich, Ramsey & Ehrlich LLP, 803 Hearst Avenue, Berkeley, CA 94710-2017 |
| aty |  | Thomas B. Walper, Munger, Tolles and Olson LLP, 350 S. Grand Ave. 50th Fl., Los Angeles, CA 90071-3426 |
|  | + | Catherine Steege, JENNER & BLOCK LLP, 353 N. Clark St., Chicago, IL 60654-5474 |
|  | + | Terri L. Mascherin, JENNER & BLOCK LLP, 353 N. Clark St., Chicago, IL 60654-5474 |

TOTAL: 5

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI).

NONE

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, \*duplicate of an address listed above, \*P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

NONE

# NOTICE CERTIFICATION

**I, Joseph Speetjens, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Dec 20, 2020        Signature:    /s/Joseph Speetjens

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on December 18, 2020 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Alexander S. Gorin | on behalf of Interested Party Google  LLC alex.gorin@mto.com, cindi.richardson@mto.com |
| Andrew R. Lewis | on behalf of Interested Party Google  LLC andrew.lewis@mto.com, aileen.beltran@mto.com |
| Brett M. Schuman | on behalf of Debtor Anthony Scott Levandowski bschuman@goodwinlaw.com  pdukemosier@goodwinlaw.com |
| Dara Levinson Silveira | on behalf of Debtor Anthony Scott Levandowski dsilveira@kbkllp.com  hrobertsdonnelly@kbkllp.com |

Debra I. Grassgreen
on behalf of Creditor Uber Technologies  Inc. dgrassgreen@pszjlaw.com, hphan@pszjlaw.com

Hong-An Vu
on behalf of Debtor Anthony Scott Levandowski HVu@goodwinlaw.com  ASkorostensky@goodwinlaw.com

John W. Berry
on behalf of Interested Party Google  LLC john.berry@mto.com, lori.cruz@mto.com

John William Lucas
on behalf of Creditor Uber Technologies  Inc. jlucas@pszjlaw.com, ocarpio@pszjlaw.com

Katharine A. Kates
on behalf of Interested Party Ramsey & Ehrlich katharine@ramsey-ehrlich.com  sonia@ramsey-ehrlich.com

Michael W. Malter
on behalf of Interested Party Stephen Levandowski michael@bindermalter.com

Miriam Manning
on behalf of Creditor Uber Technologies  Inc. mmanning@pszjlaw.com, ocarpio@pszjlaw.com

Neel Chatterjee
on behalf of Debtor Anthony Scott Levandowski NChatterjee@goodwinlaw.com  ASkorostensky@goodwinlaw.com

Office of the U.S. Trustee / SF
USTPRegion17.SF.ECF@usdoj.gov

Rachel M. Walsh
on behalf of Debtor Anthony Scott Levandowski rwalsh@goodwinlaw.com

Seth Goldman
on behalf of Interested Party Google  LLC seth.goldman@mto.com, cynthia.richardson@mto.com

Thomas E. Gorman
on behalf of Interested Party Thomas E. Gorman tgorman@keker.com  thomas-gorman-9043@ecf.pacerpro.com

Tobias S. Keller
on behalf of Interested Party Keller Benvenutti Kim tkeller@kellerbenvenutti.com

Tobias S. Keller
on behalf of Debtor Anthony Scott Levandowski tkeller@kbkllp.com

Trevor Ross Fehr
on behalf of U.S. Trustee Office of the U.S. Trustee / SF trevor.fehr@usdoj.gov

Wendy W. Smith
on behalf of Interested Party Stephen Levandowski Wendy@bindermalter.com

William P. Weintraub
on behalf of Debtor Anthony Scott Levandowski WWeintraub@goodwinlaw.com  ACunningham@goodwinlaw.com

TOTAL: 21

1  MILES EHRLICH, State Bar No. 237954
   miles@ramsey-ehrlich.com
2  ISMAIL RAMSEY, State Bar No. 189820
   izzy@ramsey-ehrlich.com
3  AMY CRAIG, State Bar No. 269339
   amy@ramsey-ehrlich.com
4  KATHARINE KATES, State Bar No. 155534
   katharine@ramsey-ehrlich.com
5  RAMSEY & EHRLICH LLP
6  803 Hearst Avenue
   Berkeley, CA 94710
7  Telephone: (510) 548-3600
   Facsimile: (510) 291-3060
8

9                 **UNITED STATES BANKRUPTCY COURT**

10               **NORTHERN DISTRICT OF CALIFORNIA**

11                 **SAN FRANCISCO DIVISION**

12

13 In re:                              )   BANKRUPTCY CASE
                                       )   NO.:  20-30242 (HLB)
14 ANTHONY SCOTT LEVANDOWSKI,          )   Chapter 11
                                       )
15           Debtor.                   )
                                       )   **RAMSEY & EHRLICH LLP'S**
16                                     )   **NOTICE OF APPEAL AND**
                                       )   **STATEMENT OF ELECTION**
17                                     )   **(Form 417A)**
                                       )
18                                     )
                                       )
19                                     )
                                       )
20                                     )
                                       )
21 _____    )

22

23

24

25

26

27

28

**Part 1: Identify the appellant(s)**

1. Name(s) of appellant(s): Ramsey & Ehrlich LLP

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal: Creditor in Chapter 11 bankruptcy case

**Part 2: Identify the subject of this appeal**

1. Describe the judgment, order, or decree appealed from: Order Denying Ramsey & Ehrlich's Motion for Approval of Stipulation with Creditor, Docket No. 313, attached as Exhibit A.

2. State the date on which the judgment, order, or decree was entered: December 3, 2020

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys:

| Party | Attorney |
|-------|----------|
| Google LLC, Creditor | THOMAS B. WALPER (State Bar No. 96667) thomas.walper@mto.com JOHN W. BERRY (State Bar No. 295760) john.berry@mto.com MUNGER, TOLLES & OLSON LLP 350 South Grand Avenue, Fiftieth Floor Los Angeles, California 90071-3426 Telephone: (213) 683-9100 Facsimile: (213) 687-3702 |
| Uber Technologies, Inc., Creditor | Debra I. Grassgreen (CA Bar No. 169978) Miriam Manning (CA Bar No. 178584) PACHULSKI STANG ZIEHL & JONES LLP 150 California Street, 15th Floor San Francisco, CA 94111 Telephone: (415) 263-7000 Facsimile: (415) 263-7010 E-mail: dgrassgreen@pszjlaw.com mmanning@pszjlaw.com David J. Bradford (admitted pro hac vice) Catherine Steege (admitted pro hac vice) Terri L. Mascherin (admitted pro hac vice) JENNER & BLOCK LLP 353 N. Clark St. Chicago, IL 60654 Telephone: (312) 222-9350 E-mail: dbradford@jenner.com csteege@jenner.com tmscherin@jenner.com |

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

X  Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

Ramsey & Ehrlich LLP elects to have the appeal heard by the United States District Court rather than the Bankruptcy Appellate Panel.

Dated:  December 17, 2020

Respectfully submitted,
RAMSEY & EHRLICH LLP

By:  /s/
       Miles Ehrlich

RAMSEY & EHRLICH LLP
803 Hearst Avenue
Berkeley, CA 94710
Telephone: (510) 548-3600
Facsimile: (510) 291-3060

RAMSEY & EHRLICH LLP'S NOTICE OF APPEAL AND
STATEMENT OF ELECTION (FORM 417A)

-2-

**EXHIBIT A**

**Entered on Docket**
**December 03, 2020**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: December 2, 2020

_____
**HANNAH L. BLUMENSTIEL**
U.S. Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: | ) Case No. 20-30242 HLB |
| | ) |
| ANTHONY SCOTT LEVANDOWSKI, | ) Chapter 11 |
| | ) |
| Debtor. | ) |
| | ) |

**ORDER DENYING RAMSEY & EHRLICH LLP'S MOTION FOR APPROVAL OF STIPULATION WITH DEBTOR**

    This case comes before the court on Ramsey & Ehrlich LLP's ("R&E") motion,[1] which requests approval of a stipulation[2] between it and Mr. Levandowski related to compensation to be paid to R&E as his counsel in a federal criminal trade secrets case.[3]

    The Stipulation, dated July 22, 2020, represents that Mr. Levandowski employed R&E pursuant to a November 6, 2019 engagement agreement,[4] which provided for a flat fee/advanced payment retainer of $5.0 million for services beginning on October 1, 2019 (the "Flat Fee").

_____

[1] Dkt. 161 (the "Motion").

[2] Dkt. 161, Ex. A (the "Stipulation").

[3] See United States v. Levandowski, Case No. 3:19-cr-00377 (N.D. Cal. 2019) (the "Criminal Case").

[4] Dkt. 162, Ex. A (the "Engagement Agreement").

The Stipulation also states that R&E retains, in its client trust account, $1,529,968.82 in fees (the "Funds") paid pre-petition, by or on behalf of Mr. Levandowski for representation in the Criminal Case, and seeks approval of the transfer of the Funds to its operating account. The Stipulation summarizes the rest of the agreement between Mr. Levandowski and R&E as follows:

(1)     R&E's obligations as counsel in the Criminal Case were fully performed upon Mr. Levandowski's sentencing on August 4, 2020;

(2)     R&E had fully earned the entirety of the Flat Fee at that time;

(3)     R&E's interest in the Flat Fee, which includes the Funds in its client trust account, was fully earned, fixed and undisputed at that time;

(4)     The Funds are not property of the bankruptcy estate and are not subject to the automatic stay; and

(5)     To the extent that the automatic stay applies, the court should grant relief from the stay pursuant to section

362(d)[5] to allow the transfer of the Funds as required by CRPC Rule 1.15(c).[6]

Uber Technologies, Inc. ("Uber") and Google LLC ("Google") filed objections[7] to the Motion on August 6, 2020, seeking a review of the compensation claimed by R&E for reasonableness, given that R&E has not submitted detailed time or expense records to the court. The Oppositions also seek additional information, which they contend will facilitate the court's effort to determine the reasonableness of the fees.

In a reply,[8] filed on August 11, 2020, R&E asserts that its compensation, as a flat fee/advanced payment retainer, is not property of the bankruptcy estate and that its Motion only requests permission to transfer the Funds from the client trust account to its operating account in compliance with CRPC Rule 1.15.

---

[5] Unless otherwise indicated, all statutory citations shall refer to Title 11 of the United States Code, aka the "Bankruptcy Code"; all citations to a "Bankruptcy Rule" shall refer to one of the Federal Rules of Bankruptcy Procedure; all citations to a "B.L.R." shall refer to one of the Bankruptcy Local Rules for the United States Bankruptcy Court for the Northern District of California; and all citations to a "Civil Rule" shall refer to the Federal Rules of Civil Procedure.

[6] All citations to "CRPC" shall refer to one of the California Rules of Professional Conduct.

[7] Dkt. 188 ("Google Opposition") and Dkt. 189 ("Uber Opposition"), together (the "Oppositions").

[8] Dkt. 195 (the "Reply").

The court convened a hearing on the Motion on August 13, 2020, at which the parties presented arguments, and the court requested additional briefing.[9]  After the timely submission of supplemental briefs,[10] the court took the matter under advisement.

Based upon the court's analysis of the foregoing pleadings and consideration of the parties' arguments, R&E's Motion is hereby **DENIED WITHOUT PREJUDICE.**

**A. JURISDICTION**

This court has jurisdiction over this contested matter that this court may hear and determine, pursuant to 28 U.S.C. §§ 157(a) and (b) and 1334(b) and General Order 24 of the United States District Court for the Northern District of California. This contested matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G).  The parties also have consented to the entry of an order resolving this contested matter, which provides further support for the court's subject matter jurisdiction.[11]

---

[9] See Dkt. 200 (the "Scheduling Order").

[10] These supplemental briefs include:  (1) R&E's supplemental brief in support of the Motion (Dkt. 234; the "Motion Supplement"); (2) Uber's supplemental opposition (Dkt. 266); (3) Google's supplemental opposition (Dkt. 267); and (4) R&E's supplemental reply (Dkt. 275).

[11] Wellness Intern. Network Ltd. v. Sharif, 135 S. Ct. 1932, 1949 (2015) (holding that "Article III permits bankruptcy courts to decide [statutorily core but constitutionally non-core] claims submitted to them by consent").

**B. BACKGROUND**

Mr. Levandowski first retained R&E on an hourly-fee basis in March 2017 after he was accused of stealing trade secrets from Google. Specifically, R&E's engagement pertained to Mr. Levandowski's actions involving the conveyance of information central to Google's self-driving car technology and his role as a witness in a lawsuit brought by Waymo LLC ("Waymo"), Google's self-driving car subsidiary, against Uber.[12]

In May 2017, after a criminal referral by the presiding judge in the Waymo Litigation, the U.S. Attorney's Office for the Northern District of California opened a criminal investigation into Mr. Levandowski's conduct.[13] R&E continued to represent Mr. Levandowski during the U.S. Attorney's criminal investigation on an hourly-fee basis,[14] which proceeded while he was embroiled in both the Waymo Litigation and in an arbitration commenced against him by Google (the "Arbitration").[15]

---

[12] See Waymo LLC v. Uber Techs., Inc., Case No. C 17-00939 WHA, 2017 WL 2694191 (N.D. Cal. June 21, 2017) (the "Waymo Litigation").

[13] See Dkt. 267, p. 6.

[14] See Dkt. 103-1, p. 2.

[15] See Dkt. 64, p. 2.

In March 2019, the Arbitration panel entered an interim award against Mr. Levandowski in the amount of $127.0 million.[16] In July 2019, Mr. Levandowski retained bankruptcy counsel.[17]

On August 15, 2019, a grand jury indicted Mr. Levandowski on thirty-three felony counts of trade secret theft, stemming from his misappropriation of Google's self-driving vehicle technology.[18] R&E appeared as special counsel for Mr. Levandowski in the Criminal Case on August 27, 2019, and on September 2, 2019, R&E made its formal appearance in that case as Mr. Levandowski's counsel of record.

It was not until November 6, 2019, nearly three years after Mr. Levandowski initially retained R&E on an hourly-fee basis for its services in connection with his theft of trade secrets, that the fee arrangement changed.[19] The new Engagement Agreement offered two alternatives for payment of R&E's legal fees.[20]

Option A was explained in a provision entitled "Hourly Fee Agreement/Third Party Fee Agreement and Security Deposit."[21]

---

[16] See Dkt. 19-1, p. 141.

[17] See Dkt. 22, ¶ 6.

[18] See Dkt. 64, p. 4.

[19] See Dkt. 267, p. 6; Dkt. 162, Ex. A.

[20] See Dkt. 165, ¶ 1.

[21] See Dkt. 165, Ex. A.

Under Option A, R&E would bill for its services by the hour, at rates that could be changed after notice and which would be charged against security deposits placed with R&E.  Option A required an initial $1.0 million advance payment to be placed in R&E's client trust account <u>before</u> the performance of additional legal services, and further required that a third party enter into an agreement to provide further security deposits of $2.0 million by January 1, 2020, and $2.0 million on February 1, 2020, for a total of $4.0 million, to be placed in R&E's trust account and used only to pay delinquent invoices for legal services.

Option B was set forth in a provision entitled "Prepaid Flat Fee/Advance Payment for Costs and Expenses."[22]  It provided that the legal fee for services to be rendered from October 1, 2019 to the end of the first trial (or other alternative resolution) would be $5.0 million (the Flat Fee).  It provided that the Flat Fee "is fixed and does not depend on the amount of work performed or the results obtained.  Client acknowledges that this fee is negotiated and is not set by law."[23]

Under the terms of Option B, Mr. Levandowski would pay the Flat Fee in four installments:  $1.0 million on November 6, 2019 (the date of the Engagement Agreement); another $1.0 million on

---

[22] <u>Id.</u>

[23] <u>Id.</u>

January 7, 2020; a third $1.0 million on January 31, 2020; and

$2.0 million on February 15, 2020.[24]  Option B makes no mention

of whether the Flat Fee would be placed in R&E's trust account or

its operating account, specifying only that an immediate deposit

of $250,000 would be placed in a trust account to cover costs and

expenses as they were incurred.

Mr. Levandowski selected Option B, a choice he explained as

follows:

> I was advised by Mr. Ramsey [R&E attorney] that
> because of the possibility that I might have to
> commence a bankruptcy case, R&E would not agree
> to represent me on an hourly basis without a
> third-party payment or third-party guarantee of
> payment.[25]

On March 4, 2020 (the "Petition Date"), Mr. Levandowski

voluntarily filed a Chapter 11 bankruptcy petition in this

court.[26]  R&E represented that, sometime before the Petition

Date, Mr. Levandowski made several installment payments toward

the $5.0 million Flat Fee but had not yet paid the entire

amount.[27]  Specifically, Mr. Levandowski had paid approximately

31% of the Flat Fee, or $1,537,018.82.[28]  According to R&E, it

---

[24] See id.

[25] See Dkt. 265, ¶ 4.

[26] See Dkt. 1.

[27] See Dkt. 161, Ex. A, ¶ B.

[28] See id., ¶ C.

has since withdrawn only $7,050 to pay a third-party expense and holds the remainder of the Funds in its client trust account.[29]

On August 21, 2020, counsel for Google sent a letter to R&E requesting a breakdown of the $1,537,018.82 and asking for the dates and amounts of each payment R&E received related to the November 6, 2019 Engagement Agreement.[30]  On August 31, 2020, counsel for R&E replied with a report (the "Client Funds Report") detailing all of the deposits into and disbursements from Mr. Levandowski's client trust account since the beginning of its retention in March 2017.[31]

As Google notes in its Supplemental Opposition, the Client Funds Report confirms that, pursuant to the Engagement Agreement, about $1.5 million was paid by or on behalf of Mr. Levandowski prior to the Petition Date, and those monies now reside in an R&E client trust account.[32]  The first and largest payment in the amount of $1.0 million dollars was apparently made on October 18, 2019 on behalf of Mr. Levandowski by "Rad Urban," a company with which Mr. Levandowski had a financial relationship prior to the

---

[29] See id., p. 7.

[30] See Dkt. 267-1, Ex. A.

[31] See Dkt. 267-1, Ex. B.

[32] See Dkt. 267, p. 8.

execution of the Engagement Agreement.[33]  Mr. Levandowski did not

personally make any payments toward the Flat Fee until the day

before the Petition Date, or March 3, 2020, when he paid R&E

$950,000.[34]  He then paid R&E another $200,000 on the Petition

Date.[35]  It does not appear that Mr. Levandowski or any other

party paid the deposit of $250,000 for costs and expenses.

Neither Mr. Levandowski nor any other entity has made any

additional payments toward the Flat Fee.

On March 19, 2020, Mr. Levandowski entered a guilty plea in

the Criminal Case, and he was sentenced on August 4, 2020.  As of

that date, R&E claims to have fully completed its representation

of Mr. Levandowski under the terms of the Engagement Agreement,

thereby having fully earned its Flat Fee.

On April 8, 2020, Mr. Levandowski filed a verified

application[36] to employ R&E as special criminal counsel pursuant

to section 327(e) and Bankruptcy Rule 2014(a).  In the

Application, Mr. Levandowski represented that the Engagement

Agreement set forth the services that R&E anticipated performing,

which included advising him with respect to his plea bargain and

---

[33] Id.; see also Dkt. 267-1, Ex. B.

[34] Id.

[35] Id.

[36] Dkt. 36 (the "Application").

sentencing and his obligation to make criminal restitution after the Petition Date.[37]

The Application, which Mr. Levandowski submitted under penalty of perjury, states that R&E's employment would benefit the estate because the firm would: (1) advocate and obtain from the court in the Criminal Case approval of the "successful negotiation" with the Department of Justice of a restitution payment due at his sentencing; (2) assist in lowering the amount of his restitution payment, thereby providing more funds for distribution to his creditors; and (3) negotiate to avoid or reduce the prison time in any sentence that might be imposed, thus enabling Mr. Levandowski to work and earn funds to increase the value of his estate.[38]

In support of the Application, Mr. Ismail Ramsey submitted a declaration, pursuant to section 327(e) and Bankruptcy Rules 2014(a) and 2016.[39] Among other things, Mr. Ramsey attests that R&E holds a total of $2,307.248.04 in its client trust account as of the Petition Date, which constitutes the Funds, plus $756,499.22 for prepayment of restitution in the Criminal Case.[40]

---

[37] Id., ¶ 11.

[38] Id., ¶ 14.

[39] Dkt. 37 ("Mr. Ramsey's Declaration").

[40] Id., ¶ 16.

He further states that R&E would not bill the estate on an hourly basis for its services but would rely upon the Funds in its client trust account for future payment.[41]

Mr. Ramsey's Declaration also indicates, however, that R&E might apply to the court for the reimbursement of actual, necessary expenses incurred post-petition, in accordance with section 330, and that R&E intends to file a proof of claim for the remaining balance of its Flat Fee, or $3,449,251.18.[42]

Upon objection by the United States Trustee and others, the Application was withdrawn. Mr. Levandowski then retained R&E in his personal capacity, and despite his formal entry of a guilty plea on August 4, 2020, R&E apparently expects to continue to represent him at least through his February 2021 status hearing regarding his self-surrender date.[43]

In the Motion, R&E asks the court for relief under sections 362(d)(1) and (2), Bankruptcy Rule 4001(d), and B.L.R. 4001-1 and 9014-1(b)(3).

---

[41] Id., ¶ 17.

[42] Id.

[43] See Dkt. 267, p. 9; see also Dkt. 267-1, Ex. B.

**C. ANALYSIS**

**1. The Stipulation and Relief Requested.**

In its Motion, R&E asks the court to approve the Stipulation and to enter an order that "authorizes the transfer of the [Funds] from the firm's client trust account to the firm's operating account at the conclusion of the criminal matter."[44] By its express terms, however, the Stipulation provides for much more, including that:

(1)    R&E has fully performed its representation obligations upon the sentencing of Mr. Levandowski;

(2)    R&E will have fully earned the entirety of the Flat Fee as of the sentencing of Mr. Levandowski;

(3)    R&E's interest in the Flat Fee and the balance of the Funds will become fixed, undisputed and fully earned as of the sentencing of Mr. Levandowski;

(4)    The Funds are not property of the bankruptcy estate and are not subject to the automatic stay; and

(5)    To the extent the automatic stay applies, relief from stay is granted to allow the transfer of the Funds to R&E's operating account.

---

[44] See Dkt. 161, p. 2.

Notwithstanding the scope of the relief afforded by the Stipulation, R&E maintains that its Motion is focused on the transfer of Funds, so that it may comply with the requirements of CRPC Rule 1.15. [45] It insists that it filed the Motion solely "[i]n the interest of full transparency and in an abundance of caution," to confirm with this court that such a transfer would not be in violation of the automatic stay. [46]

Uber and Google ask that the Motion and R&E's request to transfer the Funds be denied. Uber and Google represent that they do not oppose R&E being paid fully and fairly for its services but ask the court to recognize that the Funds are property of the estate and subject to a section 329 reasonableness review.

R&E has replied that its request is "exceedingly narrow," and that it seeks only to comply with CRPC Rule 1.15(c) by timely removing earned fees (the Funds) from its client trust account. In fact, R&E specifically states:

> And it [the approval of the Motion] in no way precludes Uber or Google from later filing a proper motion under section 329 or 502(b)(4) to seek this court's review of the "reasonableness" of the flat fee retainer funds the Debtor paid to R&E pre-petition (or the larger unsecured amount he is still obligated to pay under the terms of the Engagement Agreement). They simply need to do so through a noticed motion properly filed under Bankruptcy Rule 2017 . . .

---

[45] See Dkt. 161, p. 12.

[46] Id.

All R&E seeks here is a 'comfort order' confirming
that R&E may transfer the prepetition advance retainer
funds . . . without running afoul of the automatic
stay.[47]

Despite this apparent recognition by R&E that this court may

undertake a review of the reasonableness of R&E's proposed

compensation in its Motion, the Stipulation itself appears to

attempt to foreclose such a review, as it provides that the Funds

are fixed, undisputed, and have been fully earned, are not

property of the estate, and thus, not subject to review by this

court pursuant to section 329 and Bankruptcy Rule 2017.

**2. Classification of the Retainer and CRPC Rule 1.15.**

In its Motion, and according to the Engagement Agreement,

R&E asserts that its compensation is based on a "flat

fee/advanced payment retainer," and that, therefore, the Funds

are not property of the bankruptcy estate.  It relies on CRPC

Rule 1.15(e), which provides that:

A lawyer may make an agreement for, charge, or collect
a flat fee for specified legal services. A flat fee is
a fixed amount that constitutes complete payment for
the performance of described services regardless of
the amount of work ultimately involved, and which may
be paid in whole or in part in advance of the lawyer
providing those services.[48]

---

[47] Dkt. 195, p. 1.

[48] CRPC Rule 1.15(e).

CRPC Rule 1.15 sets forth an attorney's duties regarding safekeeping of funds and property of clients and other persons. Pursuant to CRPC Rule 1.15(a), all advance payments for fees, costs, and expenses must be deposited into a trust account. Pursuant to CRPC Rule 1.15(b), a flat fee advance can be placed in a lawyer's operating account if the lawyer discloses to the client in writing that: (1) the client has the right to have the flat fee advance placed in a trust account until the fee is earned; and (2) the client is entitled to a refund of any amount of the fee that is unearned because the services were not completed.[49]

R&E points to CRPC Rule 1.15 as setting forth a requirement to timely transfer the "fully earned" Funds. R&E admits that it placed the Funds into the client trust account and that Mr. Levandowski would be entitled to a refund of any fees that were not earned. It maintains, however, that it has fully earned the Funds, as verified by the Motion, the Stipulation, and Mr. Levandowski's supporting declarations.[50]

Initially, even if the limited purpose of the Stipulation and Motion was to comply with a requirement that earned funds

---

[49] CRPC Rule 1.15(b)(1) (emphasis added).

[50] See, e.g., Dkt. 265.

be removed from a client trust account, CRPC Rule 1.15(c)(2)

provides that:

> [I]f a client or other person disputes the lawyer or
> law firm's right to receive a portion of trust funds,
> the disputed portion shall not be withdrawn until the
> dispute is finally resolved.[51]

Uber and Google challenge R&E's characterization of the Flat

Fee based upon its actual treatment by Mr. Levandowski and R&E,

which they argue indicates that it was more in the nature of a

security retainer. Uber and Google first note that R&E is

seeking an order affecting more than just the Funds in trust by

asking for a judicial determination that the entire Flat Fee was

fully earned. They point out that Mr. Levandowski never

completed the payments contemplated by the Engagement Agreement,

and that thus, his performance does not satisfy the requirement

of a deposit of a Flat Fee that was fully earned.

Next, Uber and Google point out that R&E did not treat the

payments it received as prepayments of the Flat Fee. R&E did not

previously place any portion of those payments into its operating

account as an indication that they had been earned. Instead, R&E

placed the Funds into a client trust account until they were

determined to be "fully earned," with the expectation that any

unearned fees would be returned. The failure to treat the

---

[51] CRPC Rule 1.15(c)(2).

payments as earned prior to the Petition Date indicates that the Funds are more like a security retainer, which is frequently held to be property of the estate.[52]

R&E cites to several cases in arguing that retainers characterized as flat fee or advance payment retainers were earned upon receipt and, therefore, not property of the bankruptcy estate. That authority, however, involved an examination of the true nature and application of the retainer, and in many instances determined the retainer was more in the nature of a security retainer to be held until the fees were earned.[53]

Precedent makes clear that the court must look to the nature of the Flat Fee to determine Mr. Levandowski's interest, and thus the estate's interest, in the Funds as of the Petition Date. And the court concludes that, despite the language of the Engagement Agreement, it is apparent that the actual treatment of the payments, which assumed that any unearned fees would be refunded

---

[52] See In re Blackburn, 448 B.R. 28, 35 (Bankr. D. Idaho 2011).

[53] Id. at 35 ("To determine the extent of Debtor's interest in the retainer at the time of filing, and thus the estate's interest, the Court must first determine the nature of the retainer at issue."); see also White v. Coyne, Schultz, Becker & Bauer (In re Pawlak), 483 B.R. 169, 176 (Bankr. W.D. Wis. 2012) (holding that whether a flat fee retainer paid to law firm in days immediately preceding their bankruptcy filing was included in "property of the estate" depended upon whether debtors had any retained interest in retainer when their petition was filed).

to Mr. Levandowski, means the Funds remain property of the bankruptcy estate.

Uber and Google also point out two additional timing concerns, both of which support this conclusion. First, the position of R&E that the Funds have been "fully earned" and are now R&E's property could not be true if its engagement continues. This appears to be the case, given R&E's representation that it will continue to represent Mr. Levandowski through his February 22, 2021 hearing concerning his surrender for imprisonment.

On the other hand, they observe that the original term of active representation upon which the Flat Fee was based was expected to be eighteen months, but in fact, the actual active representation covered only four months (if measured by the guilty plea), or seven months (if measured by the sentencing date). Those facts alone give rise to a need for a review of the Flat Fee.

But in addition, Mr. Levandowski sought to employ R&E in this bankruptcy case and toward that end, attested that the firm's employment related to this case.[54] Had it been employed by this estate, the court would have been required to review R&E's fees. Mr. Levandowski also attested that R&E's services

---

[54] See Dkt. 265.

would benefit the estate because R&E would attempt to obtain approval of a reduced restitution payment, which would increase his distribution to creditors, and would try to reduce Mr. Levandowski's prison sentence, which would permit him to work and contribute his post-petition earnings (which are property of the estate) to his creditors.[55]

Still further, both Mr. Levandowski and R&E (in its Bankruptcy Rule 2014(a) declaration) stated an intention to submit a proof of claim for the more than $3,300,000 that Mr. Levandowski has not yet paid, a claim also subject to the court's consideration, assuming it draws an objection.[56]

Considering the dispute raised by Uber and Google regarding the determination of what fees have been earned and whether the fees are reasonable, along with R&E's expectation that, despite its failure to timely file a proof of claim, Mr. Levandowski intends to amend his schedules and statements to provide for the full balance of the retainer as an undisputed debt, it appears appropriate for this court to determine whether there are unearned fees due to Mr. Levandowski's estate and whether the compensation is reasonable.

---

[55] Id., ¶ 14.

[56] Id., ¶ 18; Dkt. 37, ¶ 17.

**3. Reasonableness Review under section 329.**

Regardless of the determination of the nature of the Flat Fee or whether the Funds are property of the bankruptcy estate, the court finds that it has the authority and the obligation to review the reasonableness of R&E's fees and of the Engagement Agreement pursuant to section 329, by requiring R&E to file an application under Bankruptcy Rule 2017.

Section 329(b) provides that an attorney for a debtor seeking payment of fees under an agreement made within a year before the petition date must establish that the proposed fees do not exceed the "reasonable value of any such services."[57]

The record before the court establishes that the bankruptcy and R&E's representation of Mr. Levandowski arise from the same set of facts; namely, Mr. Levandowski's actions with respect to Google and Uber. Mr. Levandowski's theft of trade secrets, during his employment at Google and his subsequent employment by Uber, led not only to the $170.0 million arbitration award that precipitated this bankruptcy, but also to the criminal referral by the judge presiding over the Waymo Litigation, to Mr. Levandowski's indictment, and ultimately, to his new fee agreement with R&E. These events are connected at their very core.

---

[57] See In re Perrine, 369 B.R. 571, 580–81 (Bankr. C.D. Cal. 2007).

That interrelationship and connection are further demonstrated by Mr. Levandowski's declaration submitted in support of his Application to hire R&E as special counsel in this bankruptcy case under section 327(e).[58]  The fact that he ultimately withdrew the Application does not negate the underlying intent or truthfulness of the sworn declarations.

The timing of R&E's new Engagement Agreement, which is the subject of R&E's Motion and required either a full advance payment or security deposits in the amount of a $4.0 million on the eve of the bankruptcy filing, also clearly indicates that the services and payments contemplated by the revised agreement were "in contemplation of or in connection with" the bankruptcy.

R&E began representing Mr. Levandowski in May 2017 and billed its fees on an hourly basis for several years.  Following the Arbitration award and criminal indictment, it became clear that a bankruptcy filing was imminent.  At that point, and apparently concerned that Mr. Levandowski might become unable to pay his bills, R&E required a switch from the prior hourly billable relationship to the Flat Fee or third party guaranteed hourly payment arrangement in order to continue its representation.

---

[58] Dkt. 36.

When faced with the possibility of losing the criminal counsel upon which he had relied for nearly three years, it is easy to see that Mr. Levandowski had little choice but to concede to R&E's demand. The fact that Mr. Levandowski "chose" the Flat Fee option is of no consequence; he was likely forced to that conclusion by his inability to find a willing third-party source for a $4.0 million deposit. In any event, the record shows that he failed to comply with the installment payment requirements of the Flat Fee option, including the deposit of $250,000 for costs and expenses. R&E did not draw on any amounts as earned and placed all payments into the client trust account, strongly signaling that these funds are property of the bankruptcy estate.

The events that occurred here are exactly the type that section 329 was intended to address – where a debtor who has little leverage must concede to an attorney's demand for payment in light of a pending bankruptcy. Section 329 provides the court with a one-year reach-back to examine the reasonableness of such fee agreements and payments in order to preserve assets which might be available to the estate.

The most analogous caselaw presented by the parties indicates that bankruptcy courts do not limit the application of section 329 solely to the attorney representation during the filing or administration of the bankruptcy case. Courts have held that the nature of the service does not matter to the

application of the statute and have found that a connection between criminal representation and the bankruptcy case justifies the application of section 329.

Google and Uber cite to In re Rheuban as illustrative of this point.[59] Rheuban involved compensation to criminal counsel for representation in connection with possible criminal and regulatory violations arising out of the debtor's business relationship with a troubled savings and loan. The debtor controlled the troubled savings and loan, which had been placed into receivership by a resolution trust corporation and was under investigation by the FBI.

The investigation focused on the debtor's business relationship with the savings and loan. The debtor retained criminal counsel to assist with the investigations. At first, debtor's criminal counsel billed on an hourly basis, but the arrangement switched to a "flat non-refundable fee" of $1.5 million plus any "independent" costs and expenses for court fees, investigator fees, expert fees, and for the hiring of "any persons possessing special skills or expertise [who were] not employees of the firm".[60] The parties agreed that "under no

---

[59] In re Rheuban, 121 B.R. 368 (Bankr. C.D. Cal. 1990).

[60] Id. at 374.

circumstances would [the client] be entitled to the return of any portion of the [Fee]".[61]

On the day before the bankruptcy filing, the debtor paid over $763,754 in cash, and facilitated the transfer of real property he once owned, to criminal counsel, describing these transfers as "an earned upon receipt" retainer to compensate the law firm. Criminal counsel represented the debtor in "interfacing" with the U.S. Attorney's office and savings and loan regulators and continued to assist the debtor post-petition, even advising the debtor on his 5th amendment rights associated with his meeting of creditors, but never sought employment under section 327 or disclosed their compensation under section 329.

In finding that the fees paid under the earned upon receipt retainer were subject to review pursuant to section 329, the Rheuban court found that the services rendered by criminal counsel in that case were "in connection" with the bankruptcy case because the agreement to provide legal services arose out of the debtor's business relationship with the savings and loan, which was the focus of the regulatory and criminal proceedings.[62] The debtor's serious financial problems were in part due to the same investigations, which undoubtedly would have an impact on

---

[61] Id.
[62] Id.

the bankruptcy case.  The Rheuban court also found it significant that, at the time the debtor entered into the retainer agreement and paid the fee, he was contemplating bankruptcy.[63]

Google cites to Rheuban for its argument that courts applying section 329 to criminal defense attorney fees have found that "[i]t is especially important for the attorney to make a strong showing of reasonableness of the compensation when the services are for criminal defense because it is unlikely that the creditors of the Debtor are liable to receive any benefit from such services."[64]

Rheuban also cited to Conrad,[65] the hallmark case setting forth the policy considerations behind section 329 (and its predecessor statute, section 60d of the Bankruptcy Act).  Conrad ordered the turnover of $2000 that had been paid by the debtor to counsel prepetition, for services related to negotiating with creditors for an extension or creditor supervision of operations shortly before the filing of an involuntary petition.

The Court noted that the services were procured at a time when the debtor was contemplating bankruptcy, and described the policy concerns as follows:

_____

[63] Id.

[64] Id. at 385.

[65] Conrad, Rubin & Lesser v. Pender, 289 U.S. 472 (1933).

The manifest purpose of the provision is to safeguard the assets of those who are acting in contemplation of bankruptcy. . . and to provide a restraint upon opportunities to make an unreasonable disposition of property through arrangement for excessive payments for prospective legal services.[66]

The Court held that the statute is not restricted by "the specific nature of the legal services to be rendered," but whether "the payment or transfer to provide for them is made 'in contemplation' of bankruptcy."[67]  The Court set forth the test for "in contemplation:"

[T]he controlling question is with respect to the state of mind of the debtor and whether the thought of bankruptcy was the impelling cause of the transaction. If the payment or transfer was thus motivated, it may be re-examined, and its reasonableness determined.[68]

"Impel" means "to urge to action through moral pressure; to drive forward".[69]  In the instant case, it appears clear from the Mr. Levandowski's Declaration that the prospect of bankruptcy was the cause of the switch from an hourly billable arrangement to a flat fee/advanced payment retainer, as well as the demand that fees be paid pre-petition for all future work.

In another more recent case with similar facts, the court examined the application of section 329 to a flat fee prepetition

---

[66] Id. at 476-77.

[67] Id.

[68] Id. at 477.

[69] See American Heritage Dictionary 709 (3d ed. 1992)

retainer paid to criminal counsel.[70]   The debtor was the chief

executive officer of a financial corporation that owned a savings

and loan.[71]  On the date the debtor was first identified as "the

central figure" in the financial problems of the savings and

loan, he hired criminal counsel to assist with "all criminal

matters which might arise out of his connection" with the

financial corporation and savings and loan investigations for a

flat fee of $450,000.[72]  A month later, the engagement agreement

was modified to provide a cash payment of $200,000 and conveyance

of certain art objects valued at $100,000 as "payment in full"

and not to secure payment or for antecedent debt. At the time of

the agreement and payment, no criminal charges were pending, and

the services were considered primarily prospective.

     The court found that, when criminal counsel received the

money and art from the debtor, it knew of the proposed bankruptcy

and all were concerned that debtor's assets would shortly be

seized by the government.  Within four months of the agreement,

the debtor filed a voluntary Chapter 11 petition, but was not

indicted for nearly three years.  Rather than consider the

adversary proceeding seeking to recover the fee as a fraudulent

---

[70] Wooton v. Ravkind (In re Dixon), 143 B.R. 671 (Bankr. N.D. Tex. 1992), aff'd, 85 F.3d 626 (5th Cir. 1996).

[71] See id.

[72] Id. at 674.

transfer, the court reviewed the reasonableness of the fees *sua sponte*, under section 329 and Bankruptcy Rule 2017. The court relied upon the holdings in <u>Conrad</u> and <u>In re Wood</u>[73] in ruling that:

> Notwithstanding the fact that [criminal counsel] did not represent [debtor] in his Chapter 11 proceeding, [counsel's] fee arrangement is subject to scrutiny under section 329(b) of the Code. Moreover, the fact [debtor and counsel] treated the retainer as a flat fee does not limit the court's authority to review the reasonableness of the arrangement.[74]

"The statutory provisions are unambiguous. Attorney's fees are subject to review by the court notwithstanding the terms of any fee arrangement."[75]

Like the facts here, <u>Dixon</u> found the actions of the debtor to be the simultaneous cause of both his financial problems and resulting bankruptcy case and of his need for criminal representation. The timeline of events provided a clear connection between the retention of criminal counsel and the commencement of the bankruptcy case.

Google also cites to <u>In re Perrine</u> to support its argument that a showing of reasonableness is also required under section

---

[73] 210 U.S. 246 (1908).

[74] <u>Dixon</u>, 143 B.R. at 677.

[75] <u>Id.</u> at 675.

329, when a debtor's attorney receives a pre-petition retainer and applies it to antecedent debt and to non-bankruptcy work.[76]

In <u>Perrine</u>, the court determined that a debtor's transfer of property valued at $30,000 ninety-six days before the filing of the bankruptcy petition was "made in contemplation of or in connection with" the debtor's bankruptcy case, and held that "Congress intended to permit bankruptcy courts to reexamine the reasonableness of fees within the one-year look back period, irrespective of the nature of the services rendered."[77] The court recognized that <u>the subjective inquiry is whether the services and payments agreed to by the debtor were influenced by the possibility or imminence of bankruptcy</u>.[78] Debtor's counsel attributed all but $3,000 to pre-petition work, including litigation with debtor's primary creditor and also failed to file the proper disclosure with the court. The court applied section 329 and disapproved the fees.

Finally, even if a prepetition retainer is actually in the nature of a flat or earned fee that might not be considered

_____

[76] 369 B.R. 571 (Bankr. C.D. Cal. 2007).

[77] <u>Id.</u> at 580 (internal citations omitted).

[78] <u>Id.</u> (emphasis added) (internal citations omitted).

property of the estate, it still falls within the purview of section 329.[79]

In <u>Lamie</u>, the Supreme Court primarily determined that an attorney for a chapter 7 debtor could not be paid from property of the estate under section 330(a)(a) unless employment had been approved under section 327.[80] The Court recognized an exception, though, noting that section 330(a)(1) does not prevent a debtor from engaging counsel before a Chapter 7 case and paying a flat fee for compensation earned prepetition to ensure the filing is correct. The Court expressly found that, even in cases involving an allowed flat fee, a debtors' attorneys must disclose fees they receive from a debtor in the year prior to its bankruptcy filing and that courts may order excessive payments returned to the estate.[81]

---

[79] <u>See</u>, <u>e.g.</u>, <u>Pawlak</u>, 483 B.R. at 181 ("an attorney who ended up doing nothing in exchange for a sizable flat fee might technically be the owner of the money at the time of filing, but the amount of compensation would inevitably face heavy scrutiny under section 329(b)").

[80] <u>Lamie v. United States Tr</u>., 540 U.S. 526 (2004).

[81] <u>Id.</u> at 537-538. <u>See also, Danner v. United States Tr.</u> (<u>In re Danner</u>), 2012 WL 3205242(9th Cir. BAP 2012) (holding that an advance payment retainer if not treated as earned on receipt is not considered the attorney's property until it is actually earned, citing Idaho Professional Conduct Rule 1.15(c)); <u>In re McDonald Bros. Constr. Inc</u>., 114 B.R.989 (Bankr. N.D. Ill., 1990) (holding that an advance payment retainer is not property of the estate but is still subject to court review for excessiveness under section 329); <u>In re Alvarado</u>, 496 B.R.200 (N.D. Cal. 2013) (holding that bankruptcy court had the authority to order disgorgement of fees paid to Chapter 7 debtors' attorney as exceeding reasonable value of attorney's services, notwithstanding the prepetition fee payments were in the nature of advance payment retainers not included in bankruptcy estate.).

Following the reasoning in <u>Lamie</u>, the <u>Pawlak</u> court more recently recognized that:

> It is important to note that regardless of the nature of the fee under state law, the manner in which an attorney collects the fee for services in bankruptcy is simultaneously regulated by the code.[82]

Based upon its reading of <u>Lamie,</u> the court held that courts have "a need and a right" to full, unfettered disclosure of all fee and financial arrangements between debtors and their attorneys.[83] The underlying purpose of the disclosure requirements is to police "potential for overreaching" by debtors' counsel, and full disclosure provides an opportunity for all interested parties to review and object to any unreasonable fees.[84] The court is the watchdogs of that process.

These cases and others make clear that the Bankruptcy Code contemplates fee agreements like the one at issue in this case, and that section 329 authorizes bankruptcy courts to analyze the reasonableness of fees paid pursuant to such agreements and to order excessive payments returned to the estate.

## D. CONCLUSION

---

[82] <u>Pawlak</u>, 483 B.R. at 178.

[83] <u>Id.</u>

[84] <u>Id.</u>

1   For the foregoing reasons, the court sustains the objections

2   filed by Google and Uber.  R&E's Motion to approve the

3   Stipulation is **DENIED WITHOUT PREJUDICE** to R&E filing an

4   application seeking approval of its fees.  Any such application

5   shall comply with applicable law, as well as with the court's and

6   the United States Trustee's guidelines.

7

8

9                              **\*\*END OF ORDER\*\***

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28