**APPEAL, MARIN, PlnDue, DsclsDue, DebtEd**

# U.S. Bankruptcy Court
## California Northern Bankruptcy Court (San Francisco)
### Bankruptcy Petition #: 20−30242

| | |
|---|---|
| | *Date filed:* 03/04/2020 |
| *Assigned to:* Judge Hannah L. Blumenstiel | *341 meeting:* 05/15/2020 |
| Chapter 11 | *Deadline for filing claims:* 07/06/2020 |
| Voluntary | *Deadline for objecting to discharge:* 06/08/2020 |
| Asset | |

***Debtor***
**Anthony Scott Levandowski**
1655 Oak Avenue
Saint Helena, CA 94574
MARIN−CA
SSN / ITIN: xxx−xx−3994

represented by **Neel Chatterjee**
Goodwin Procter LLP
601 Marshall St.
Redwood City, CA 94063
650−752−3256
Email: NChatterjee@goodwinlaw.com

**Tobias S. Keller**
Keller Benvenutti Kim LLP
650 California St. #1900
San Francisco, CA 94108
(415) 796−0709
Email: tkeller@kbkllp.com

**Dara Levinson Silveira**
Keller Benvenutti Kim LLP
650 California St. #1900
San Francisco, CA 94108
415−364−6793
Email: dsilveira@kbkllp.com

**Brett M. Schuman**
Goodwin Procter LLP
Three Embarcadero Center
28th Floor
San Francisco, CA 94111−4003
(415) 733−6000
Email: bschuman@goodwinlaw.com

**Hong−An Vu**
Goodwin Procter LLP
601 S. Figueroa St., Suite 4100
Los Angeles, CA 90017−5704
213−426−2500
Email: HVu@goodwinlaw.com

**Rachel M. Walsh**
Goodwin Procter LLP
Three Embarcadero Center
San Francisco, CA 94111
(415) 733−6000
Email: rwalsh@goodwinlaw.com

**William P. Weintraub**
Goodwin Procter LLP

620 Eighth Ave.
New York, NY 10018−1405
212−813−8839
Email: WWeintraub@goodwinlaw.com

**U.S. Trustee**
**Office of the U.S. Trustee / SF**
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05−0153
San Francisco, CA 94102
(415)705−3333

represented by **Trevor Ross Fehr**
Office of the U.S. Trustee
280 S 1st St. #268
San Jose, CA 95113
(408) 535−5525
Email: trevor.fehr@usdoj.gov

| Filing Date | # | | Docket Text |
|---|---|---|---|
| 12/02/2020 | | 313 | Order Denying Ramsey & Ehrlich LLP's Motion For Approval Of Stipulation With Debtor(Related Doc # 161) (bg) (Entered: 12/03/2020) |
| 12/17/2020 | | 351 | Motion for Leave to Appeal *Bankruptcy Court's Order Denying Ramsey & Ehrlich LLP's Motion for Approval of Stipulation With Debtor* Filed by Interested Party Ramsey & Ehrlich (Kates, Katharine) DEFECTIVE ENTRY: Notice of Hearing or Opportunity for Hearing to be filed separately. Modified on 12/18/2020 (lm). (Entered: 12/17/2020) |
| 12/18/2020 | | 353 | Amended Notice Regarding (RE: related document(s)351 Motion for Leave to Appeal *Bankruptcy Court's Order Denying Ramsey & Ehrlich LLP's Motion for Approval of Stipulation With Debtor* Filed by Interested Party Ramsey & Ehrlich (Kates, Katharine) DEFECTIVE ENTRY: Notice of Hearing or Opportunity for Hearing to be filed separately. Modified on 12/18/2020 (lm).). Filed by Interested Party Ramsey & Ehrlich (Kates, Katharine) (Entered: 12/18/2020) |

**Entered on Docket**
**December 03, 2020**
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



**Signed and Filed: December 2, 2020**

_____
HANNAH L. BLUMENSTIEL
U.S. Bankruptcy Judge

### UNITED STATES BANKRUPTCY COURT

### FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re:                                ) Case No. 20-30242 HLB
                                      )
ANTHONY SCOTT LEVANDOWSKI,            ) Chapter 11
                                      )
                Debtor.               )
_____)

### ORDER DENYING RAMSEY & EHRLICH LLP'S MOTION FOR APPROVAL OF STIPULATION WITH DEBTOR

This case comes before the court on Ramsey & Ehrlich LLP's ("R&E") motion,[1] which requests approval of a stipulation[2] between it and Mr. Levandowski related to compensation to be paid to R&E as his counsel in a federal criminal trade secrets case.[3]

The Stipulation, dated July 22, 2020, represents that Mr. Levandowski employed R&E pursuant to a November 6, 2019 engagement agreement,[4] which provided for a flat fee/advanced payment retainer of $5.0 million for services beginning on October 1, 2019 (the "Flat Fee").

_____
[1] Dkt. 161 (the "Motion").

[2] Dkt. 161, Ex. A (the "Stipulation").

[3] See United States v. Levandowski, Case No. 3:19-cr-00377 (N.D. Cal. 2019) (the "Criminal Case").

[4] Dkt. 162, Ex. A (the "Engagement Agreement").

The Stipulation also states that R&E retains, in its client trust account, $1,529,968.82 in fees (the "Funds") paid pre-petition, by or on behalf of Mr. Levandowski for representation in the Criminal Case, and seeks approval of the transfer of the Funds to its operating account.  The Stipulation summarizes the rest of the agreement between Mr. Levandowski and R&E as follows:

(1)    R&E's obligations as counsel in the Criminal Case were fully performed upon Mr. Levandowski's sentencing on August 4, 2020;

(2)    R&E had fully earned the entirety of the Flat Fee at that time;

(3)    R&E's interest in the Flat Fee, which includes the Funds in its client trust account, was fully earned, fixed and undisputed at that time;

(4)    The Funds are not property of the bankruptcy estate and are not subject to the automatic stay; and

(5)    To the extent that the automatic stay applies, the court should grant relief from the stay pursuant to section

362(d)[5] to allow the transfer of the Funds as required by CRPC
Rule 1.15(c).[6]

    Uber Technologies, Inc. ("Uber") and Google LLC ("Google")
filed objections[7] to the Motion on August 6, 2020, seeking a
review of the compensation claimed by R&E for reasonableness,
given that R&E has not submitted detailed time or expense records
to the court.  The Oppositions also seek additional information,
which they contend will facilitate the court's effort to
determine the reasonableness of the fees.

    In a reply,[8] filed on August 11, 2020, R&E asserts that its
compensation, as a flat fee/advanced payment retainer, is not
property of the bankruptcy estate and that its Motion only
requests permission to transfer the Funds from the client trust
account to its operating account in compliance with CRPC Rule
1.15.

---

[5] Unless otherwise indicated, all statutory citations shall refer to Title 11
of the United States Code, aka the "Bankruptcy Code"; all citations to a
"Bankruptcy Rule" shall refer to one of the Federal Rules of Bankruptcy
Procedure; all citations to a "B.L.R." shall refer to one of the Bankruptcy
Local Rules for the United States Bankruptcy Court for the Northern District
of California; and all citations to a "Civil Rule" shall refer to the Federal
Rules of Civil Procedure.

[6] All citations to "CRPC" shall refer to one of the California Rules of
Professional Conduct.

[7] Dkt. 188 ("Google Opposition") and Dkt. 189 ("Uber Opposition"), together
(the "Oppositions").

[8] Dkt. 195 (the "Reply").

The court convened a hearing on the Motion on August 13, 2020, at which the parties presented arguments, and the court requested additional briefing.[9]  After the timely submission of supplemental briefs,[10] the court took the matter under advisement.

Based upon the court's analysis of the foregoing pleadings and consideration of the parties' arguments, R&E's Motion is hereby **DENIED WITHOUT PREJUDICE.**

**A. JURISDICTION**

This court has jurisdiction over this contested matter that this court may hear and determine, pursuant to 28 U.S.C. §§ 157(a) and (b) and 1334(b) and General Order 24 of the United States District Court for the Northern District of California. This contested matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G).  The parties also have consented to the entry of an order resolving this contested matter, which provides further support for the court's subject matter jurisdiction.[11]

---

[9] See Dkt. 200 (the "Scheduling Order").

[10] These supplemental briefs include:  (1) R&E's supplemental brief in support of the Motion (Dkt. 234; the "Motion Supplement"); (2) Uber's supplemental opposition (Dkt. 266); (3) Google's supplemental opposition (Dkt. 267); and (4) R&E's supplemental reply (Dkt. 275).

[11] Wellness Intern. Network Ltd. v. Sharif, 135 S. Ct. 1932, 1949 (2015) (holding that "Article III permits bankruptcy courts to decide [statutorily core but constitutionally non-core] claims submitted to them by consent").

## B. BACKGROUND

Mr. Levandowski first retained R&E on an hourly-fee basis in March 2017 after he was accused of stealing trade secrets from Google. Specifically, R&E's engagement pertained to Mr. Levandowski's actions involving the conveyance of information central to Google's self-driving car technology and his role as a witness in a lawsuit brought by Waymo LLC ("Waymo"), Google's self-driving car subsidiary, against Uber.[12]

In May 2017, after a criminal referral by the presiding judge in the Waymo Litigation, the U.S. Attorney's Office for the Northern District of California opened a criminal investigation into Mr. Levandowski's conduct.[13] R&E continued to represent Mr. Levandowski during the U.S. Attorney's criminal investigation on an hourly-fee basis,[14] which proceeded while he was embroiled in both the Waymo Litigation and in an arbitration commenced against him by Google (the "Arbitration").[15]

---

[12] See Waymo LLC v. Uber Techs., Inc., Case No. C 17-00939 WHA, 2017 WL 2694191 (N.D. Cal. June 21, 2017) (the "Waymo Litigation").

[13] See Dkt. 267, p. 6.

[14] See Dkt. 103-1, p. 2.

[15] See Dkt. 64, p. 2.

In March 2019, the Arbitration panel entered an interim award against Mr. Levandowski in the amount of $127.0 million.[16] In July 2019, Mr. Levandowski retained bankruptcy counsel.[17]

On August 15, 2019, a grand jury indicted Mr. Levandowski on thirty-three felony counts of trade secret theft, stemming from his misappropriation of Google's self-driving vehicle technology.[18]  R&E appeared as special counsel for Mr. Levandowski in the Criminal Case on August 27, 2019, and on September 2, 2019, R&E made its formal appearance in that case as Mr. Levandowski's counsel of record.

It was not until November 6, 2019, nearly three years after Mr. Levandowski initially retained R&E on an hourly-fee basis for its services in connection with his theft of trade secrets, that the fee arrangement changed.[19]  The new Engagement Agreement offered two alternatives for payment of R&E's legal fees.[20]

Option A was explained in a provision entitled "Hourly Fee Agreement/Third Party Fee Agreement and Security Deposit."[21]

---

[16] See Dkt. 19-1, p. 141.

[17] See Dkt. 22, ¶ 6.

[18] See Dkt. 64, p. 4.

[19] See Dkt. 267, p. 6; Dkt. 162, Ex. A.

[20] See Dkt. 165, ¶ 1.

[21] See Dkt. 165, Ex. A.

Under Option A, R&E would bill for its services by the hour, at rates that could be changed after notice and which would be charged against security deposits placed with R&E.  Option A required an initial $1.0 million advance payment to be placed in R&E's client trust account <u>before</u> the performance of additional legal services, and further required that a third party enter into an agreement to provide further security deposits of $2.0 million by January 1, 2020, and $2.0 million on February 1, 2020, for a total of $4.0 million, to be placed in R&E's trust account and used only to pay delinquent invoices for legal services.

Option B was set forth in a provision entitled "Prepaid Flat Fee/Advance Payment for Costs and Expenses."[22]  It provided that the legal fee for services to be rendered from October 1, 2019 to the end of the first trial (or other alternative resolution) would be $5.0 million (the Flat Fee).  It provided that the Flat Fee "is fixed and does not depend on the amount of work performed or the results obtained.  Client acknowledges that this fee is negotiated and is not set by law."[23]

Under the terms of Option B, Mr. Levandowski would pay the Flat Fee in four installments:  $1.0 million on November 6, 2019 (the date of the Engagement Agreement); another $1.0 million on

---

[22] <u>Id.</u>

[23] <u>Id.</u>

January 7, 2020; a third $1.0 million on January 31, 2020; and $2.0 million on February 15, 2020.[24]  Option B makes no mention of whether the Flat Fee would be placed in R&E's trust account or its operating account, specifying only that an immediate deposit of $250,000 would be placed in a trust account to cover costs and expenses as they were incurred.

Mr. Levandowski selected Option B, a choice he explained as follows:

> I was advised by Mr. Ramsey [R&E attorney] that
> because of the possibility that I might have to
> commence a bankruptcy case, R&E would not agree
> to represent me on an hourly basis without a
> third-party payment or third-party guarantee of
> payment.[25]

On March 4, 2020 (the "<u>Petition Date</u>"), Mr. Levandowski voluntarily filed a Chapter 11 bankruptcy petition in this court.[26]  R&E represented that, sometime before the Petition Date, Mr. Levandowski made several installment payments toward the $5.0 million Flat Fee but had not yet paid the entire amount.[27]  Specifically, Mr. Levandowski had paid approximately 31% of the Flat Fee, or $1,537,018.82.[28]  According to R&E, it

---

[24] <u>See</u> <u>id.</u>

[25] <u>See</u> Dkt. 265, ¶ 4.

[26] <u>See</u> Dkt. 1.

[27] <u>See</u> Dkt. 161, Ex. A, ¶ B.

[28] <u>See</u> <u>id.</u>, ¶ C.

10

has since withdrawn only $7,050 to pay a third-party expense and holds the remainder of the Funds in its client trust account.[29]

On August 21, 2020, counsel for Google sent a letter to R&E requesting a breakdown of the $1,537,018.82 and asking for the dates and amounts of each payment R&E received related to the November 6, 2019 Engagement Agreement.[30]  On August 31, 2020, counsel for R&E replied with a report (the "Client Funds Report") detailing all of the deposits into and disbursements from Mr. Levandowski's client trust account since the beginning of its retention in March 2017.[31]

As Google notes in its Supplemental Opposition, the Client Funds Report confirms that, pursuant to the Engagement Agreement, about $1.5 million was paid by or on behalf of Mr. Levandowski prior to the Petition Date, and those monies now reside in an R&E client trust account.[32]  The first and largest payment in the amount of $1.0 million dollars was apparently made on October 18, 2019 on behalf of Mr. Levandowski by "Rad Urban," a company with which Mr. Levandowski had a financial relationship prior to the

---

[29] See id., p. 7.

[30] See Dkt. 267-1, Ex. A.

[31] See Dkt. 267-1, Ex. B.

[32] See Dkt. 267, p. 8.

execution of the Engagement Agreement.[33]  Mr. Levandowski did not

personally make any payments toward the Flat Fee until the day

before the Petition Date, or March 3, 2020, when he paid R&E

$950,000.[34]  He then paid R&E another $200,000 on the Petition

Date.[35]  It does not appear that Mr. Levandowski or any other

party paid the deposit of $250,000 for costs and expenses.

Neither Mr. Levandowski nor any other entity has made any

additional payments toward the Flat Fee.

On March 19, 2020, Mr. Levandowski entered a guilty plea in

the Criminal Case, and he was sentenced on August 4, 2020.  As of

that date, R&E claims to have fully completed its representation

of Mr. Levandowski under the terms of the Engagement Agreement,

thereby having fully earned its Flat Fee.

On April 8, 2020, Mr. Levandowski filed a verified

application[36] to employ R&E as special criminal counsel pursuant

to section 327(e) and Bankruptcy Rule 2014(a).  In the

Application, Mr. Levandowski represented that the Engagement

Agreement set forth the services that R&E anticipated performing,

which included advising him with respect to his plea bargain and

---

[33] Id.; see also Dkt. 267-1, Ex. B.

[34] Id.

[35] Id.

[36] Dkt. 36 (the "Application").

sentencing and his obligation to make criminal restitution after the Petition Date.[37]

The Application, which Mr. Levandowski submitted under penalty of perjury, states that R&E's employment would benefit the estate because the firm would:  (1) advocate and obtain from the court in the Criminal Case approval of the "successful negotiation" with the Department of Justice of a restitution payment due at his sentencing; (2) assist in lowering the amount of his restitution payment, thereby providing more funds for distribution to his creditors; and (3) negotiate to avoid or reduce the prison time in any sentence that might be imposed, thus enabling Mr. Levandowski to work and earn funds to increase the value of his estate.[38]

In support of the Application, Mr. Ismail Ramsey submitted a declaration, pursuant to section 327(e)and Bankruptcy Rules 2014(a)and 2016.[39]  Among other things, Mr. Ramsey attests that R&E holds a total of $2,307.248.04 in its client trust account as of the Petition Date, which constitutes the Funds, plus $756,499.22 for prepayment of restitution in the Criminal Case.[40]

---

[37] Id., ¶ 11.

[38] Id., ¶ 14.

[39] Dkt. 37 ("Mr. Ramsey's Declaration").

[40] Id., ¶ 16.

He further states that R&E would not bill the estate on an hourly basis for its services but would rely upon the Funds in its client trust account for future payment.[41]

Mr. Ramsey's Declaration also indicates, however, that R&E might apply to the court for the reimbursement of actual, necessary expenses incurred post-petition, in accordance with section 330, and that R&E intends to file a proof of claim for the remaining balance of its Flat Fee, or $3,449,251.18.[42]

Upon objection by the United States Trustee and others, the Application was withdrawn. Mr. Levandowski then retained R&E in his personal capacity, and despite his formal entry of a guilty plea on August 4, 2020, R&E apparently expects to continue to represent him at least through his February 2021 status hearing regarding his self-surrender date.[43]

In the Motion, R&E asks the court for relief under sections 362(d)(1) and (2), Bankruptcy Rule 4001(d), and B.L.R. 4001-1 and 9014-1(b)(3).

---

[41] Id., ¶ 17.

[42] Id.

[43] See Dkt. 267, p. 9; see also Dkt. 267-1, Ex. B.

**C. ANALYSIS**

**1. The Stipulation and Relief Requested.**

In its Motion, R&E asks the court to approve the Stipulation and to enter an order that "authorizes the transfer of the [Funds] from the firm's client trust account to the firm's operating account at the conclusion of the criminal matter."[44] By its express terms, however, the Stipulation provides for much more, including that:

(1)     R&E has fully performed its representation obligations upon the sentencing of Mr. Levandowski;

(2)     R&E will have fully earned the entirety of the Flat Fee as of the sentencing of Mr. Levandowski;

(3)     R&E's interest in the Flat Fee and the balance of the Funds will become fixed, undisputed and fully earned as of the sentencing of Mr. Levandowski;

(4)     The Funds are not property of the bankruptcy estate and are not subject to the automatic stay; and

(5)     To the extent the automatic stay applies, relief from stay is granted to allow the transfer of the Funds to R&E's operating account.

---

[44] See Dkt. 161, p. 2.

Notwithstanding the scope of the relief afforded by the Stipulation, R&E maintains that its Motion is focused on the transfer of Funds, so that it may comply with the requirements of CRPC Rule 1.15. [45]  It insists that it filed the Motion solely "[i]n the interest of full transparency and in an abundance of caution," to confirm with this court that such a transfer would not be in violation of the automatic stay.[46]

Uber and Google ask that the Motion and R&E's request to transfer the Funds be denied.  Uber and Google represent that they do not oppose R&E being paid fully and fairly for its services but ask the court to recognize that the Funds are property of the estate and subject to a section 329 reasonableness review.

R&E has replied that its request is "exceedingly narrow," and that it seeks only to comply with CRPC Rule 1.15(c) by timely removing earned fees (the Funds) from its client trust account. In fact, R&E specifically states:

> And it [the approval of the Motion] in no way
> precludes Uber or Google from later filing a proper
> motion under section 329 or 502(b)(4) to seek this
> court's review of the "reasonableness" of the flat fee
> retainer funds the Debtor paid to R&E pre-petition (or
> the larger unsecured amount he is still obligated to
> pay under the terms of the Engagement Agreement).
> They simply need to do so through a noticed motion
> properly filed under Bankruptcy Rule 2017 . . .

---

[45] See Dkt. 161, p. 12.

[46] Id.

> All R&E seeks here is a 'comfort order' confirming
> that R&E may transfer the prepetition advance retainer
> funds . . . without running afoul of the automatic
> stay.[47]

Despite this apparent recognition by R&E that this court may

undertake a review of the reasonableness of R&E's proposed

compensation in its Motion, the Stipulation itself appears to

attempt to foreclose such a review, as it provides that the Funds

are fixed, undisputed, and have been fully earned, are not

property of the estate, and thus, not subject to review by this

court pursuant to section 329 and Bankruptcy Rule 2017.

**2. Classification of the Retainer and CRPC Rule 1.15.**

In its Motion, and according to the Engagement Agreement,

R&E asserts that its compensation is based on a "flat

fee/advanced payment retainer," and that, therefore, the Funds

are not property of the bankruptcy estate.  It relies on CRPC

Rule 1.15(e), which provides that:

> A lawyer may make an agreement for, charge, or collect
> a flat fee for specified legal services. A flat fee is
> a fixed amount that constitutes complete payment for
> the performance of described services regardless of
> the amount of work ultimately involved, and which may
> be paid in whole or in part in advance of the lawyer
> providing those services.[48]

---

[47] Dkt. 195, p. 1.

[48] CRPC Rule 1.15(e).

CRPC Rule 1.15 sets forth an attorney's duties regarding safekeeping of funds and property of clients and other persons. Pursuant to CRPC Rule 1.15(a), all <u>advance payments</u> for fees, costs, and expenses <u>must be deposited into a trust account</u>. Pursuant to CRPC Rule 1.15(b), a <u>flat fee advance can be placed in a lawyer's operating account</u> if the lawyer discloses to the client in writing that:  (1) the client has the right to have the flat fee advance placed in a trust account <u>until the fee is earned</u>; and (2) the client is entitled to a refund of any amount of the fee that is unearned because the services were not completed.[49]

R&E points to CRPC Rule 1.15 as setting forth a requirement to timely transfer the "fully earned" Funds.  R&E admits that it placed the Funds into the client trust account and that Mr. Levandowski would be entitled to a refund of any fees that were not earned.  It maintains, however, that it has fully earned the Funds, as verified by the Motion, the Stipulation, and Mr. Levandowski's supporting declarations.[50]

Initially, even if the limited purpose of the Stipulation and Motion was to comply with a requirement that earned funds

---

[49] CRPC Rule 1.15(b)(1) (<u>emphasis added</u>).

[50] <u>See</u>, <u>e.g.</u>, Dkt. 265.

be removed from a client trust account, CRPC Rule 1.15(c)(2)

provides that:

> [I]f a client or other person disputes the lawyer or
> law firm's right to receive a portion of trust funds,
> the disputed portion shall not be withdrawn until the
> dispute is finally resolved.[51]

Uber and Google challenge R&E's characterization of the Flat

Fee based upon its actual treatment by Mr. Levandowski and R&E,

which they argue indicates that it was more in the nature of a

security retainer.  Uber and Google first note that R&E is

seeking an order affecting more than just the Funds in trust by

asking for a judicial determination that the entire Flat Fee was

fully earned.  They point out that Mr. Levandowski never

completed the payments contemplated by the Engagement Agreement,

and that thus, his performance does not satisfy the requirement

of a deposit of a Flat Fee that was fully earned.

Next, Uber and Google point out that R&E did not treat the

payments it received as prepayments of the Flat Fee.  R&E did not

previously place any portion of those payments into its operating

account as an indication that they had been earned.  Instead, R&E

placed the Funds into a client trust account until they were

determined to be "fully earned," with the expectation that any

unearned fees would be returned.  The failure to treat the

---

[51] CRPC Rule 1.15(c)(2).

1   payments as earned prior to the Petition Date indicates that the

2   Funds are more like a security retainer, which is frequently held

3   to be property of the estate.[52]

4       R&E cites to several cases in arguing that retainers

5   characterized as flat fee or advance payment retainers were

6   earned upon receipt and, therefore, not property of the

7   bankruptcy estate.  That authority, however, involved an

8   examination of the true nature and application of the retainer,

9   and in many instances determined the retainer was more in the

10  nature of a security retainer to be held until the fees were

11  earned.[53]

12      Precedent makes clear that the court must look to the nature

13  of the Flat Fee to determine Mr. Levandowski's interest, and thus

14  the estate's interest, in the Funds as of the Petition Date.  And

15  the court concludes that, despite the language of the Engagement

16  Agreement, it is apparent that the actual treatment of the

17  payments, which assumed that any unearned fees would be refunded

---

[52] See In re Blackburn, 448 B.R. 28, 35 (Bankr. D. Idaho 2011).

[53] Id. at 35 ("To determine the extent of Debtor's interest in the retainer at the time of filing, and thus the estate's interest, the Court must first determine the nature of the retainer at issue."); see also White v. Coyne, Schultz, Becker & Bauer (In re Pawlak), 483 B.R. 169, 176 (Bankr. W.D. Wis. 2012) (holding that whether a flat fee retainer paid to law firm in days immediately preceding their bankruptcy filing was included in "property of the estate" depended upon whether debtors had any retained interest in retainer when their petition was filed).

to Mr. Levandowski, means the Funds remain property of the bankruptcy estate.

Uber and Google also point out two additional timing concerns, both of which support this conclusion.  First, the position of R&E that the Funds have been "fully earned" and are now R&E's property could not be true if its engagement continues.  This appears to be the case, given R&E's representation that it will continue to represent Mr. Levandowski through his February 22, 2021 hearing concerning his surrender for imprisonment.

On the other hand, they observe that the original term of active representation upon which the Flat Fee was based was expected to be eighteen months, but in fact, the actual active representation covered only four months (if measured by the guilty plea), or seven months (if measured by the sentencing date).  Those facts alone give rise to a need for a review of the Flat Fee.

But in addition, Mr. Levandowski sought to employ R&E in this bankruptcy case and toward that end, attested that the firm's employment related to this case.[54]  Had it been employed by this estate, the court would have been required to review R&E's fees.  Mr. Levandowski also attested that R&E's services

---

[54] See Dkt. 265.

would benefit the estate because R&E would attempt to obtain approval of a reduced restitution payment, which would increase his distribution to creditors, and would try to reduce Mr. Levandowski's prison sentence, which would permit him to work and contribute his post-petition earnings (which are property of the estate) to his creditors.[55]

Still further, both Mr. Levandowski and R&E (in its Bankruptcy Rule 2014(a) declaration) stated an intention to submit a proof of claim for the more than $3,300,000 that Mr. Levandowski has not yet paid, a claim also subject to the court's consideration, assuming it draws an objection.[56]

Considering the dispute raised by Uber and Google regarding the determination of what fees have been earned and whether the fees are reasonable, along with R&E's expectation that, despite its failure to timely file a proof of claim, Mr. Levandowski intends to amend his schedules and statements to provide for the full balance of the retainer as an undisputed debt, it appears appropriate for this court to determine whether there are unearned fees due to Mr. Levandowski's estate and whether the compensation is reasonable.

---

[55] <u>Id.</u>, ¶ 14.

[56] <u>Id.</u>, ¶ 18; Dkt. 37, ¶ 17.

### 3. Reasonableness Review under section 329.

Regardless of the determination of the nature of the Flat Fee or whether the Funds are property of the bankruptcy estate, the court finds that it has the authority and the obligation to review the reasonableness of R&E's fees and of the Engagement Agreement pursuant to section 329, by requiring R&E to file an application under Bankruptcy Rule 2017.

Section 329(b) provides that an attorney for a debtor seeking payment of fees under an agreement made within a year before the petition date must establish that the proposed fees do not exceed the "reasonable value of any such services."[57]

The record before the court establishes that the bankruptcy and R&E's representation of Mr. Levandowski arise from the same set of facts; namely, Mr. Levandowski's actions with respect to Google and Uber. Mr. Levandowski's theft of trade secrets, during his employment at Google and his subsequent employment by Uber, led not only to the $170.0 million arbitration award that precipitated this bankruptcy, but also to the criminal referral by the judge presiding over the Waymo Litigation, to Mr. Levandowski's indictment, and ultimately, to his new fee agreement with R&E. These events are connected at their very core.

---

[57] See In re Perrine, 369 B.R. 571, 580-81 (Bankr. C.D. Cal. 2007).

1    That interrelationship and connection are further

2  demonstrated by Mr. Levandowski's declaration submitted in

3  support of his Application to hire R&E as special counsel in this

4  bankruptcy case under section 327(e).[58]  The fact that he

5  ultimately withdrew the Application does not negate the

6  underlying intent or truthfulness of the sworn declarations.

7

8    The timing of R&E's new Engagement Agreement, which is the

9  subject of R&E's Motion and required either a full advance

10  payment or security deposits in the amount of a $4.0 million on

11  the eve of the bankruptcy filing, also clearly indicates that the

12  services and payments contemplated by the revised agreement were

13  "in contemplation of or in connection with" the bankruptcy.

14

15    R&E began representing Mr. Levandowski in May 2017 and

16  billed its fees on an hourly basis for several years.  Following

17  the Arbitration award and criminal indictment, it became clear

18  that a bankruptcy filing was imminent.  At that point, and

19  apparently concerned that Mr. Levandowski might become unable to

20  pay his bills, R&E required a switch from the prior hourly

21  billable relationship to the Flat Fee or third party guaranteed

22  hourly payment arrangement in order to continue its

23  representation.

24

25

26

27

28  _____
[58] Dkt. 36.

When faced with the possibility of losing the criminal counsel upon which he had relied for nearly three years, it is easy to see that Mr. Levandowski had little choice but to concede to R&E's demand.  The fact that Mr. Levandowski "chose" the Flat Fee option is of no consequence; he was likely forced to that conclusion by his inability to find a willing third-party source for a $4.0 million deposit.  In any event, the record shows that he failed to comply with the installment payment requirements of the Flat Fee option, including the deposit of $250,000 for costs and expenses.  R&E did not draw on any amounts as earned and placed all payments into the client trust account, strongly signaling that these funds are property of the bankruptcy estate.

The events that occurred here are exactly the type that section 329 was intended to address – where a debtor who has little leverage must concede to an attorney's demand for payment in light of a pending bankruptcy.  Section 329 provides the court with a one-year reach-back to examine the reasonableness of such fee agreements and payments in order to preserve assets which might be available to the estate.

The most analogous caselaw presented by the parties indicates that bankruptcy courts do not limit the application of section 329 solely to the attorney representation during the filing or administration of the bankruptcy case.  Courts have held that the nature of the service does not matter to the

application of the statute and have found that a connection between criminal representation and the bankruptcy case justifies the application of section 329.

Google and Uber cite to In re Rheuban as illustrative of this point.[59]  Rheuban involved compensation to criminal counsel for representation in connection with possible criminal and regulatory violations arising out of the debtor's business relationship with a troubled savings and loan.  The debtor controlled the troubled savings and loan, which had been placed into receivership by a resolution trust corporation and was under investigation by the FBI.

The investigation focused on the debtor's business relationship with the savings and loan.  The debtor retained criminal counsel to assist with the investigations.  At first, debtor's criminal counsel billed on an hourly basis, but the arrangement switched to a "flat non-refundable fee" of $1.5 million plus any "independent" costs and expenses for court fees, investigator fees, expert fees, and for the hiring of "any persons possessing special skills or expertise [who were] not employees of the firm".[60]  The parties agreed that "under no

---

[59] In re Rheuban, 121 B.R. 368 (Bankr. C.D. Cal. 1990).

[60] Id. at 374.

circumstances would [the client] be entitled to the return of any portion of the [Fee]".[61]

On the day before the bankruptcy filing, the debtor paid over $763,754 in cash, and facilitated the transfer of real property he once owned, to criminal counsel, describing these transfers as "an earned upon receipt" retainer to compensate the law firm.  Criminal counsel represented the debtor in "interfacing" with the U.S. Attorney's office and savings and loan regulators and continued to assist the debtor post-petition, even advising the debtor on his 5th amendment rights associated with his meeting of creditors, but never sought employment under section 327 or disclosed their compensation under section 329.

In finding that the fees paid under the earned upon receipt retainer were subject to review pursuant to section 329, the Rheuban court found that the services rendered by criminal counsel in that case were "in connection" with the bankruptcy case because the agreement to provide legal services arose out of the debtor's business relationship with the savings and loan, which was the focus of the regulatory and criminal proceedings.[62] The debtor's serious financial problems were in part due to the same investigations, which undoubtedly would have an impact on

---

[61] Id.
[62] Id.

the bankruptcy case.  The Rheuban court also found it significant that, at the time the debtor entered into the retainer agreement and paid the fee, he was contemplating bankruptcy.[63]

Google cites to Rheuban for its argument that courts applying section 329 to criminal defense attorney fees have found that "[i]t is especially important for the attorney to make a strong showing of reasonableness of the compensation when the services are for criminal defense because it is unlikely that the creditors of the Debtor are liable to receive any benefit from such services."[64]

Rheuban also cited to Conrad,[65] the hallmark case setting forth the policy considerations behind section 329 (and its predecessor statute, section 60d of the Bankruptcy Act).  Conrad ordered the turnover of $2000 that had been paid by the debtor to counsel prepetition, for services related to negotiating with creditors for an extension or creditor supervision of operations shortly before the filing of an involuntary petition.

The Court noted that the services were procured at a time when the debtor was contemplating bankruptcy, and described the policy concerns as follows:

---

[63] Id.

[64] Id. at 385.

[65] Conrad, Rubin & Lesser v. Pender, 289 U.S. 472 (1933).

> The manifest purpose of the provision is to safeguard the assets of those who are acting in contemplation of bankruptcy. . . and to provide a restraint upon opportunities to make an unreasonable disposition of property through arrangement for excessive payments for prospective legal services.[66]

The Court held that the statute is not restricted by "the specific nature of the legal services to be rendered," but whether "the payment or transfer to provide for them is made 'in contemplation' of bankruptcy."[67]   The Court set forth the test for "in contemplation:"

> [T]he controlling question is with respect to the state of mind of the debtor and whether the thought of bankruptcy was the impelling cause of the transaction. If the payment or transfer was thus motivated, it may be re-examined, and its reasonableness determined.[68]

"Impel" means "to urge to action through moral pressure; to drive forward".[69]   In the instant case, it appears clear from the Mr. Levandowski's Declaration that the prospect of bankruptcy was the cause of the switch from an hourly billable arrangement to a flat fee/advanced payment retainer, as well as the demand that fees be paid pre-petition for all future work.

In another more recent case with similar facts, the court examined the application of section 329 to a flat fee prepetition

---

[66] Id. at 476-77.

[67] Id.

[68] Id. at 477.

[69] See American Heritage Dictionary 709 (3d ed. 1992)

retainer paid to criminal counsel.[70]   The debtor was the chief

executive officer of a financial corporation that owned a savings

and loan.[71]   On the date the debtor was first identified as "the

central figure" in the financial problems of the savings and

loan, he hired criminal counsel to assist with "all criminal

matters which might arise out of his connection" with the

financial corporation and savings and loan investigations for a

flat fee of $450,000.[72]   A month later, the engagement agreement

was modified to provide a cash payment of $200,000 and conveyance

of certain art objects valued at $100,000 as "payment in full"

and not to secure payment or for antecedent debt. At the time of

the agreement and payment, no criminal charges were pending, and

the services were considered primarily prospective.

       The court found that, when criminal counsel received the

money and art from the debtor, it knew of the proposed bankruptcy

and all were concerned that debtor's assets would shortly be

seized by the government.  Within four months of the agreement,

the debtor filed a voluntary Chapter 11 petition, but was not

indicted for nearly three years.  Rather than consider the

adversary proceeding seeking to recover the fee as a fraudulent

---

[70] Wooton v. Ravkind (In re Dixon), 143 B.R. 671 (Bankr. N.D. Tex. 1992), aff'd, 85 F.3d 626 (5th Cir. 1996).

[71] See id.

[72] Id. at 674.

transfer, the court reviewed the reasonableness of the fees *sua sponte*, under section 329 and Bankruptcy Rule 2017.  The court relied upon the holdings in <u>Conrad</u> and <u>In re Wood</u>[73] in ruling that:

> Notwithstanding the fact that [criminal counsel] did not represent [debtor] in his Chapter 11 proceeding, [counsel's] fee arrangement is subject to scrutiny under section 329(b) of the Code. Moreover, the fact [debtor and counsel] treated the retainer as a flat fee does not limit the court's authority to review the reasonableness of the arrangement.[74]

"The statutory provisions are unambiguous. Attorney's fees are subject to review by the court notwithstanding the terms of any fee arrangement."[75]

Like the facts here, <u>Dixon</u> found the actions of the debtor to be the simultaneous cause of both his financial problems and resulting bankruptcy case and of his need for criminal representation.  The timeline of events provided a clear connection between the retention of criminal counsel and the commencement of the bankruptcy case.

Google also cites to <u>In re Perrine</u> to support its argument that a showing of reasonableness is also required under section

---

[73] 210 U.S. 246 (1908).

[74] <u>Dixon</u>, 143 B.R. at 677.

[75] <u>Id.</u> at 675.

329, when a debtor's attorney receives a pre-petition retainer and applies it to antecedent debt and to non-bankruptcy work.[76]

In <u>Perrine</u>, the court determined that a debtor's transfer of property valued at $30,000 ninety-six days before the filing of the bankruptcy petition was "made in contemplation of or in connection with" the debtor's bankruptcy case, and held that "Congress intended to permit bankruptcy courts to reexamine the reasonableness of fees within the one-year look back period, irrespective of the nature of the services rendered."[77]   The court recognized that <u>the subjective inquiry is whether the services and payments agreed to by the debtor were influenced by the possibility or imminence of bankruptcy</u>.[78]   Debtor's counsel attributed all but $3,000 to pre-petition work, including litigation with debtor's primary creditor and also failed to file the proper disclosure with the court.   The court applied section 329 and disapproved the fees.

Finally, even if a prepetition retainer is actually in the nature of a flat or earned fee that might not be considered

---

[76] 369 B.R. 571 (Bankr. C.D. Cal. 2007).

[77] <u>Id.</u> at 580 (internal citations omitted).

[78] <u>Id.</u> (emphasis added) (internal citations omitted).

property of the estate, it still falls within the purview of

section 329.[79]

In <u>Lamie</u>, the Supreme Court primarily determined that an

attorney for a chapter 7 debtor could not be paid from property

of the estate under section 330(a)(a) unless employment had been

approved under section 327.[80]   The Court recognized an

exception, though, noting that section 330(a)(1) does not prevent

a debtor from engaging counsel before a Chapter 7 case and paying

a flat fee for compensation earned prepetition to ensure the

filing is correct.   The Court expressly found that, even in cases

involving an allowed flat fee, a debtors' attorneys must disclose

fees they receive from a debtor in the year prior to its

bankruptcy filing and that courts may order excessive payments

returned to the estate.[81]

---

[79] <u>See</u>, <u>e.g.</u>, <u>Pawlak</u>, 483 B.R. at 181 ("an attorney who ended up doing nothing in exchange for a sizable flat fee might technically be the owner of the money at the time of filing, but the amount of compensation would inevitably face heavy scrutiny under section 329(b)").

[80] <u>Lamie v. United States Tr.</u>, 540 U.S. 526 (2004).

[81] <u>Id.</u> at 537-538. <u>See also, Danner v. United States Tr.</u> (<u>In re Danner</u>), 2012 WL 3205242(9th Cir. BAP 2012) (holding that an advance payment retainer if not treated as earned on receipt is not considered the attorney's property until it is actually earned, citing Idaho Professional Conduct Rule 1.15(c)); <u>In re McDonald Bros. Constr. Inc</u>., 114 B.R.989 (Bankr. N.D. Ill., 1990) (holding that an advance payment retainer is not property of the estate but is still subject to court review for excessiveness under section 329; <u>In re Alvarado</u>, 496 B.R.200 (N.D. Cal. 2013) (holding that bankruptcy court had the authority to order disgorgement of fees paid to Chapter 7 debtors' attorney as exceeding reasonable value of attorney's services, notwithstanding the prepetition fee payments were in the nature of advance payment retainers not included in bankruptcy estate.).

Following the reasoning in <u>Lamie</u>, the <u>Pawlak</u> court more recently recognized that:

> It is important to note that regardless of the nature of the fee under state law, the manner in which an attorney collects the fee for services in bankruptcy is simultaneously regulated by the code.[82]

Based upon its reading of <u>Lamie,</u> the court held that courts have "a need and a right" to full, unfettered disclosure of all fee and financial arrangements between debtors and their attorneys.[83]  The underlying purpose of the disclosure requirements is to police "potential for overreaching" by debtors' counsel, and full disclosure provides an opportunity for all interested parties to review and object to any unreasonable fees.[84]  The court is the watchdogs of that process.

These cases and others make clear that the Bankruptcy Code contemplates fee agreements like the one at issue in this case, and that section 329 authorizes bankruptcy courts to analyze the reasonableness of fees paid pursuant to such agreements and to order excessive payments returned to the estate.

**D. CONCLUSION**

---

[82] <u>Pawlak</u>, 483 B.R. at 178.

[83] <u>Id.</u>

[84] <u>Id.</u>

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

　　For the foregoing reasons, the court sustains the objections filed by Google and Uber.  R&E's Motion to approve the Stipulation is **DENIED WITHOUT PREJUDICE** to R&E filing an application seeking approval of its fees.  Any such application shall comply with applicable law, as well as with the court's and the United States Trustee's guidelines.

**\*\*END OF ORDER\*\***

## Court Service List

[None]

1   MILES EHRLICH, State Bar No. 237954
    miles@ramsey-ehrlich.com
2   ISMAIL RAMSEY, State Bar No. 189820
    izzy@ramsey-ehrlich.com
3   AMY CRAIG, State Bar No. 269339
    amy@ramsey-ehrlich.com
4   KATHARINE KATES, State Bar No. 155534
    katharine@ramsey-ehrlich.com
5   RAMSEY & EHRLICH LLP
    803 Hearst Avenue
6   Berkeley, CA 94710
    Telephone: (510) 548-3600
7   Facsimile: (510) 291-3060
8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                      SAN FRANCISCO DIVISION

12

13   In re:                              )   **NOTICE OF MOTION AND**
                                         )   **MOTION FOR LEAVE TO APPEAL**
14   ANTHONY SCOTT LEVANDOWSKI,          )   **BANKRUPTCY COURT'S ORDER**
                                         )   **DENYING RAMSEY & EHRLICH**
15          Debtor.                      )   **LLP'S MOTION FOR APPROVAL**
                                         )   **OF STIPULATION WITH DEBTOR;**
16                                       )   **MEMORANDUM OF POINTS AND**
                                         )   **AUTHORITIES**
17                                       )
18                                       )   *Motion for Leave to Appeal from*
                                         )   BANKRUPTCY CASE
19                                       )   NO.:  20-30242 (HLB)
                                         )   Chapter 11
20                                       )
21                                       )
22                                       )
23   _____)

24

25

26

27

28

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH LLP'S MOTION FOR APPROVAL
OF STIPULATION; BANKR. CASE No. 20-30242 (HLB)

37

1

**TABLE OF CONTENTS**

2

NOTICE OF MOTION AND MOTION .................................................................................... 1

3

STATEMENT OF ISSUES...................................................................................................... 1

4

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

5

I.      INTRODUCTION.......................................................................................................... 1

6

II.     FACTS AND PROCEDURAL HISTORY ................................................................... 4

7

        A.      R&E's Representation of the Debtor ................................................... 4

8

        B.      The Motion for Approval of Stipulation ................................................ 6

9

III.    ARGUMENT ............................................................................................................... 8

10

        A.      The Bankruptcy Court's Decision Is a Final Order.................................... 8

11

                1.      Standard for Appeal as of Right...................................................... 8

12

                2.      The Court's Order Is Final and Appealable ................................... 9

13

        B.      Interlocutory Review Is Appropriate......................................................... 10

14

                1.      Standard.......................................................................................... 10

15

                2.      The bankruptcy court's holding that section 329
                        applies to R&E's representation of Mr. Levandowski
                        raises a controlling question of law that is subject to
                        fair-minded disagreement and is thus appropriate for
                        interlocutory review. .................................................................. 11

16

17

18

19

20

                3.      Whether the funds belong to the bankruptcy estate
                        raises a controlling question of law that is subject to
                        fair-minded disagreement and thus appropriate for
                        interlocutory review ................................................................... 20

21

22

23

IV.     CONCLUSION .......................................................................................................... 22

24

25

26

27

28

38

TABLE OF AUTHORITIES

**CASES**

*Albert-Sheridan v. State Bar of Cal. (In re Albert-Sheridan)*, 960 F.3d 1188 (9th Cir. 2020)........................................................................................................ 20

*Beirne, Maynard & Parson, L.L.P. v. Cypresswood Land Partners*, 2010 U.S. Dist. (S.D. Tex. 2010) ............................................................................................. 18

*Conrad, Rubin & Lesser v. Pender*, 289 U.S. 472 (1933) ............................................ 18

*Couch v. Telescope Inc.*, 611 F.3d 629 (9th Cir. 2010) ............................................... 11

*Cutter v. Seror (In re Cutter),* 398 B.R. 6 (9th Cir. B.A.P. 2008) ............................... 10

*In re Alvarado*, 496 B.R. 200, 202 (N.D. Cal. 2013) ................................................. 20

*In re Blackburn*, 448 B.R. 28 (Bankr. D. Idaho 2011) ................................................. 7

*In re Cement Antitrust Litig.*, 673 F.2d 1020 (9th Cir. 1981) ..................................... 11

*In re Fitzsimmons*, 725 F.2d 1208 (9th Cir. 1984) ..................................................... 17

*In re French*, 139 B.R. 485 (Bankr. D.S.D. 1992) ..................................................... 17

*In re Gugliuzza,* 852 F.3d 884 (9th Cir. 2017) ............................................................ 8

*In re Hargis*, 148 B.R. 19 (Bankr.N.D.Tex. 1991) ..................................................... 13

*In re Hargis*, 895 F.2d 1025 (5th Cir. 1990) ............................................................... 13

*In re Hooper,* 2001 (Bankr. E.D.Va. 2001).................................................................. 19

*In re Kearney*, 609 B.R. 383 (Bankr. D.N.M. 2019) .................................................. 16

*In re Newton,* 292 B.R. 563 (Bankr. E.D. Tex. 2003 .................................................. 18

*In re Perl,* 811 F.3d 1120 (9th Cir. 2016) .................................................................... 9

*In re Price,* 79 B.R. 888 (9th Cir. BAP 1988)................................................... 2, 8, 11

*In re Rheuban*, 121 B.R. 368 (Bankr. C.D.Cal. 1990) ............................................... 15

*In re Rodenbough*, 2018 Bankr. (Bankr. D. Idaho 2018) ............................................. 7

*In re Rodenbough*, 2018 Bankr.(D. Idaho 2018).................................................... 3, 20

*In re Swartout*, 20 B.R. 102 (Bankr. S.D. Ohio 1982) ............................................... 13

*In re Walters*, 868 F.2d 665 (4th Cir. 1989) ............................................................... 13

*Pavelic & LeFlore v. Marvel Entm't Grp.*, 493 U.S. 120 (1989).............................. 20

*Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, (9th Cir. 2011) ...................... 11

*Ritzen Group, Inc. v. Jackson Masonry, LLC,* 140 S. Ct. 582 ................................................ 2, 8, 9

*S.S. Body Armor I, Inc. v. Carter Ledyard & Milburn LLP,* 927 F.3d 763 (3d Cir. 2019) ..................................................................................................................................... 10

*Telemaintenance, Inc.*, 157 B.R. 352 (Bankr. N.D.Ohio 1993) ..................................................... 19

*Wootten v. Ravkind (In re Dixon)*, 143 B.R. 671 (Bankr. N.D. Tex., 1990) ................................ 15

**STATUTES**

11 U.S.C. § 329(a) ........................................................................................................................ 12, 13

11 U.S.C. §§ 362(d) ............................................................................................................................. 7

11 U.S.C. §329(b) ............................................................................................................................... 12

28 U.S.C. § 158(a) ....................................................................................................................... 1, 2, 8

28 U.S.C. §1292(b) ............................................................................................................................. 10

28 U.S.C. §158(c) ............................................................................................................................... 10

**RULES**

CRPC Rules 1.15(a) and 1.15(c) ......................................................................................................... 21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOTION FOR LEAVE TO APPEAL ORDER DENYING
R. STEPHEN & URLICH'S MOTION FOR APPROVAL OF
STIPULATION; BNKR. CASE NO.: 20-30242 (HLB)
-iii-

Case: 20-30242   Doc# 356-2   Filed: 12/22/20   Entered: 12/22/20 18:36:10   Page 40 of 99

40

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that at a time yet to be determined and before a Judge of the United States District Court for the Northern District of California yet to be assigned, Ramsey & Ehrlich, LLP ("R&E"), will move the Court to grant leave to appeal an Order issued by the Northern District Bankruptcy Court, entitled "Order Denying Ramsey & Ehrlich's Stipulation with Debtor," Docket No. 313, Bankruptcy Case No. 20-30242 (HLB) (Chapter 11), issued by the Honorable Hannah L. Blumenstiel, pursuant to 28 U.S.C. § 158(a)(1) and (3) and Federal Rules of Bankruptcy Procedure 8003 and 8004.

**STATEMENT OF ISSUES**

The issues raised on the present Motion for Leave to Appeal are:

1.       Whether the order below is a final order under 28 U.S.C. § 158(a)(1); and

2.       If the order is not final, whether the order raises questions appropriate for interlocutory review under 28 U.S.C. § 158(a)(3).

The issues that will be presented on the appeal from the bankruptcy court's order are:

1.       Whether the prepetition flat fee retainer funds received by R&E for its representation of the debtor in the separate federal criminal trade secret prosecution are subject to review under 11 U.S.C. § 329.

2.       Whether these prepetition flat fee retainer funds are part of the bankruptcy estate.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.       INTRODUCTION**

After executing a flat fee engagement agreement, Ramsey & Ehrlich, LLP ("R&E") entered a general appearance and served as criminal defense counsel for Anthony Levandowski in a federal criminal trade secret prosecution pending before Judge William H. Alsup.  On March 4, 2020, while defense preparation in the case was still underway, Mr. Levandowski filed a petition for bankruptcy under Chapter 11.  After that petition was filed, and after Mr. Levandowski agreed to resolve the criminal case through a guilty plea, R&E and Mr. Levandowski entered into a stipulation that authorized R&E to transfer the portion of the flat fee that Mr. Levandowski had

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATION; BANKR. CASE NO. 20-30242 (HLB)                    -1-

Case: 20-30242    Doc# 350-2    Filed: 12/7/20    Entered: 12/7/20 18:06:10    Page 41
of 99

41

1    paid R&E (which amounted to 31% of his total flat fee obligation) from R&E's client trust

2    account to the firm's operating account—in effect, confirming that R&E had earned all of the flat

3    fee retainer funds it held and allowing R&E to receive what amounts to one-third (31%) of the

4    compensation it was promised for carrying the criminal case through to its conclusion.

5            On July 22, 2020, shortly before Mr. Levandowski's scheduled sentencing, R&E moved

6    the bankruptcy court to approve the stipulation, authorize the transfer of legal fees to R&E's

7    operating account, and grant the requested relief from the automatic stay to do so.  Uber and

8    Google objected.  On December 3, 2020, the bankruptcy court denied the requested relief, holding

9    among other things that the flat fee payments that R&E received for Mr. Levandowski in the

10   criminal case must now undergo bankruptcy court review for "reasonableness" and possible

11   "excessiveness" and, in doing so, withstand further anticipated challenges from creditors Uber and

12   Google.  R&E now appeals.

13           This case raises a fundamental legal question concerning the scope of a bankruptcy court's

14   power to review legal fees paid for work unconnected to a pending bankruptcy matter.  In refusing

15   to approve the proffered stipulation between R&E and the debtor, and also in refusing to grant the

16   requested relief from the automatic stay, the bankruptcy court's decision below amounted to a

17   final order, which is appealable as a matter of right.  *See Ritzen Group, Inc. v. Jackson Masonry,*

18   *LLC,* 140 S. Ct. 582, 586 (2020); 28 U.S.C. § 158(a)(1).

19           But even if the order below is not deemed "final" within the meaning of 28 U.S.C.

20   §158(a)(1), this case presents a classic situation in which there exists a "controlling question of

21   law as to which there is a substantial ground for difference of opinion and an immediate appeal

22   may materially advance the ultimate termination of the litigation." *In re Price,* 79 B.R. 888, 889

23   (9th Cir. BAP 1988) (citing 28 U.S.C. § 1292).  First, the primary issue presented in this appeal—

24   the scope of a bankruptcy's courts reviewing authority under 11 U.S.C. § 329—is the central issue

25   in the proceeding below involving R&E's right to receive the compensation Mr. Levandowski

26   paid to R&E for representing him in the criminal trade secrets case.  Second, there are

27   "substantial" (indeed, ample) "grounds for difference of opinion" with the bankruptcy court's

28

42

ruling that section 329 applies in these circumstances because: (1) there is no Ninth Circuit authority on point, and (2) the only federal circuit court authority to squarely address the issue presented is a 2003 decision from the Third Circuit, reaching a conclusion that is diametrically opposite from the bankruptcy court's decision here. *See Wasserman v. Bressman (In re Bressman)*, 327 F.3d 229, 240 (3rd Cir. 2003)(holding that section 329 review *does not* apply to criminal defense counsel who plays no role in the bankruptcy case).

In addition, the bankruptcy court's separate holding that the estate retains an interest in the prepetition retainer funds paid to R&E raises another controlling question of law for which there are substantial grounds for difference of opinion. The question is whether "flat fee" or "advance payment" retainers held in compliance with the California Rules of Professional Conduct constitute property of the bankruptcy estate. The Ninth Circuit has not addressed this issue. The bankruptcy court held here that the funds were property of the bankruptcy estate. But lower courts within the Ninth Circuit have recently held that prepetition advance payment or flat fee retainers— where a client pays a fixed fee in advance for a defined scope of services to be rendered—are *not* property of the bankruptcy estate, even if the client retains a potential right of refund. *See e.g., In re Rodenbough*, 2018 Bankr. LEXIS 3192 at *10, *20-21 (Bankr. D. Idaho 2018).

Finally, resolution of these questions now will undoubtedly hasten final resolution of the dispute with Uber and Google over R&E's right to receive the compensation it bargained for from Mr. Levandowski before agreeing to enter a general appearance in the criminal case. If the bankruptcy court's order stands, R&E will be required to engage in costly and protracted litigation against Uber and Google, likely involving the submission of expert witness (and counter-expert witness) testimony, over whether the flat fee arrangement negotiated between R&E and Mr. Levandowski (and fully supported by him even through today) meets some yet-to-be-decided standard of "reasonableness" in light of the magnitude of the case, the volume of work expected at the time the flat fee was agreed to, and the financial risk for criminal defense counsel inherent in every flat fee arrangement. Indeed, this last consideration is a particularly salient factor given that the client alone decides whether to demand a trial or plead guilty, and district judges are

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATION; BNKR. CASE NO.: 20-30242(HLB)                                    -3-

Case: 20-30242   Doc# 356-2   Filed: 12/21/20   Entered: 12/21/20 18:36:10   Page 43
of 99

43

understandably reluctant to allow criminal defense counsel of record to withdraw from a case before trial, even when a client fails to pay the promised fees.[1]

If, on the other hand, section 329 review is deemed inapplicable to R&E's compensation in the criminal case and the funds are not estate property, as we think the weight of authority indicates, good cause exists to accept the stipulation immediately and grant relief from the automatic stay to allow R&E to transfer the fully-earned funds it holds from its client trust account to its operating account, as the California Rules of Professional Conduct require. In other words, a favorable decision on these threshold legal issues will bring the pending dispute to a swift and certain end.

## II.   FACTS AND PROCEDURAL HISTORY

### A.   R&E's Representation of the Debtor

R&E started representing the debtor, Anthony Levandowski, in March 2017 when he became embroiled as a non-party witness in a fiercely contested federal civil trade secrets lawsuit brought by Google's self-driving car subsidiary, Waymo, against Uber (*Waymo LLC v. Uber Techs., Inc.,* No. 3:17-cv-00939-WHA (N.D. Cal.)). The representation continued when the U.S. Attorney's Office launched a federal criminal investigation into the matter, following a criminal referral from the presiding judge. (Dkt. 162, ¶ 1).

On August 15, 2019, Mr. Levandowski was indicted on 33 felony counts of trade-secret theft under 18 U.S.C. § 1832, primarily involving technical design information relating to LiDar (light detection and ranging) sensors used in Waymo's (then Google's) self-driving cars (*United States v. Levandowski*, No. 19-00377-WHA (N.D.Cal)). (Dkt. 162, ¶¶ 1-2). The criminal charges that followed arose directly from the *Waymo v. Uber* civil litigation, which was one of the most heavily litigated civil cases in recent memory—embracing nearly 2700 docketed pleadings and

---

[1] Northern District Local Rules provide that, after making a general appearance, criminal counsel may only withdraw with approval of the Court after demonstrating "good cause." N.D.C.A. Criminal Local Rule 44-2(b). And a client's failure to pay counsel agreed compensation does not necessarily constitute "good cause." *Id.* Further, "inability to pay legal bills, without more, is not usually a sufficient basis to permit an attorney to withdraw." *United States v. Parker,* 439 F.3d 81, 104 (2d Cir. 2006) (citation omitted).

exhibits, more than 100 depositions, and a volume of discovery that the presiding judge described as a "bone-crushing production of evidence." *Waymo*, No. 17-cv-00939, Dkt. #2585 at 3. Given the extensive overlap between the *Waymo* litigation and the criminal case, discovery in the criminal case included not only the voluminous FBI investigative files, but also the enormous mass of evidence, testimony, pleadings, and digital information generated in the *Waymo* litigation. In all, the discovery produced by the prosecution to R&E totaled about 518 gigabytes—which, according to the prosecution's own calculations, was the equivalent of more than 50 million pages of documents, or 350 million pages of emails. (Dkt. 162, ¶ 2).

Before agreeing to enter a general appearance in a criminal case of such considerable magnitude and complexity, R&E negotiated a flat fee (advance payment) retainer in its Engagement Agreement to ensure that the firm could represent Mr. Levandowski through months and perhaps years of heavy litigation and trial preparation, and then take the case through a lengthy criminal jury trial and sentencing (in the event of conviction).  (Dkt. 235, ¶ 5).  In the Engagement Agreement, R&E promised to represent Mr. Levandowski through the completion of a first criminal trial or any earlier alternative resolution (such as dismissal or guilty plea) for a fixed fee of $5 million—regardless of the total amount of lawyer time that may have proved to be necessary. Specifically, the Engagement Agreement stated:

> Flat Fee for Legal Services.  The legal fee for the services to be rendered under this agreement between October 1, 2019, and the end of a first trial, if necessary, or an earlier alternative resolution shall be $5,000,000 (five million dollars). This fee is fixed and does not depend on the amount of work performed or the results obtained. Client acknowledges that this fee is negotiated and is not set by law.

(Dkt. 162, Exh. A, p. 5). The Agreement also provided a schedule of installments by which this $5-million flat fee would be paid.  (*Id.*).

On March 4, 2020, Mr. Levandowski filed his bankruptcy petition. At this time, he had paid R&E approximately 31% of the agreed-upon flat fee (specifically, $1,537,018.82 of the total flat fee of $5 million).  (Dkt. 161, Exh. A at ¶ C).  As required by California Rule of Professional Conduct 1.15(a), R&E held and still holds these retainer funds in its client trust account.  (*Id.* at ¶

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATION; BNKR. CASE NO.: 20-30242 (HLB)

-5-

Case: 20-30242   Doc# 356-2   Filed: 12/21/20   Entered: 12/21/20 18:36:10   Page 45 of 99

45

1  D).  To date, the firm has withdrawn only $7,050.  As a result, R&E currently holds $1,529,968.82

2  of the total $5 million flat fee advance-payment retainer in its client trust account. (*Id.* at ¶ D).

3  Mr. Levandowski was sentenced in the criminal case on August 4, 2020.  The judgment

4  was entered on August 6, 2020. *U.S. v. Levandowski,* Case No. 19-00377, Dkt. 99. At that time,

5  R&E's representation of Mr. Levandowski was complete under the terms of the Engagement

6  Agreement, and R&E had therefore fully earned its flat fee, as Mr. Levandowski agreed.  (Dkt.

7  161 at ¶¶ E-F).

8  **B.      The Motion for Approval of Stipulation**

9  On July 22, 2020, shortly before his scheduled sentencing, Mr. Levandowski and R&E

10  entered a stipulation that authorized the transfer of the flat fee advance payment retainer from the

11  firm's client trust account to the firm's operating account at the conclusion of the criminal matter

12  (the completion of sentencing).  That same day, R&E filed a "Motion for Approval of Stipulation

13  Between Debtor Anthony Levandowski and Ramsey & Ehrlich, LLP Authorizing Required

14  Transfer of Flat Fee Advance Payment Retainer to Firm's Operating Account Upon Completion of

15  Criminal Representation" (the "Motion").  (Dkt. No. 161 and Exh. A).

16  In addition to authorizing the transfer of the funds from the client trust account to the

17  operating account, R&E and Mr. Levandowski stipulated that, as of the imposition of the sentence

18  and entry of judgment, the entire $5-million flat fee had been fully earned, and that R&E's

19  property interest in the $1,529,968.82 of flat fee retainer funds (the one-third portion) held in its

20  client trust account from Mr. Levandowski was fixed and undisputed under California's governing

21  ethics rules for client retainer funds (the California Rules of Professional Conduct). (Dkt. 161,

22  Exh. A, ¶ F).  Further, R&E and Mr. Levandowski agreed that the California Rules of Professional

23  Conduct obligated R&E to promptly transfer these fully earned and undisputed fees out of the

24  firm's client trust account and into its firm operating account after Mr. Levandowski's sentencing

25  had concluded.  (Dkt. 161, Exh. A, ¶ G; Dkt. 165 ¶ 7; Dkt. 162, ¶ 10).

26  In the motion, R&E provided authority from lower courts within the Ninth Circuit holding

27  that prepetition flat fee—often also described as "advance payment"—retainers, such as the funds

28

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATIONS BNKR. CASE NO.: 20-30242 (HLB)                    -6-

Case: 20-30242   Doc# 356-2   Filed: 12/27/2020   Entered: 12/27/2020 18:06:10   Page 46
of 99

46

1   held by R&E, are not considered to be property of the bankruptcy estate.  *See In re Rodenbough*,

2   2018 Bankr. LEXIS 3192 at \*10 (Bankr. D. Idaho 2018) ("Advance payment retainers are not

3   property of the [bankruptcy] estate. . . The *estate's* interest in an advance payment retainer is

4   limited to an equitable accounting and a refund for any unearned portion of the fee.") (emphasis

5   added); *In re Blackburn*, 448 B.R. 28, 38 (Bankr. D. Idaho 2011) (same); (Dkt. 161 at 9-11).

6   Based on this authority, R&E sought confirmation from the bankruptcy court that transferring the

7   funds would not violate the automatic stay.  (Dkt. 161 at 12).  In the alternative, if the bankruptcy

8   court were to deem the automatic stay applicable, R&E requested an order granting relief from the

9   stay pursuant 11 U.S.C. §§ 362(d)(1) and (2) to allow R&E to receive the funds it had earned.

10   (Dkt. 161 at 12-13 and Exh. A, ¶ I).

11        After Uber and Google objected to the motion, the bankruptcy court heard argument on

12   August 13, 2020, and requested further briefing thereafter.  In addition to answering the court's

13   questions on issues already briefed, the bankruptcy court requested that the parties address

14   whether the funds held by R&E were subject to a reasonableness review under 11 U.S.C. § 329,

15   which applies to attorneys who are "representing a debtor in a case under this title [the Bankruptcy

16   Code], or in connection with such a case."  11 U.S.C. § 329(a).  In its supplemental briefing, and

17   relying on Third Circuit authority directly on point, R&E argued that, because it represented Mr.

18   Levandowski exclusively in the criminal matter and because the criminal matter raised no issues

19   related to Mr. Levandowski's financial affairs or the assets and liabilities before the bankruptcy

20   court, the representation was not "in connection with" the bankruptcy action; hence, section 329

21   review should not apply.  (Dkt. 234 at 7-15).

22        On December 3, 2020, the bankruptcy court denied R&E's requested relief.  The court

23   decided that the flat fee retainer funds held by R&E were property of the bankruptcy estate.  (Dkt.

24   313 at 19:1-2).  And the court further held that the flat fee retainer funds should be subject to

25   review under § 329 whether or not the funds are property of the estate.  (*Id.* at 21:1-8).  As a result,

26   R&E may not transfer the funds from its client trust account to its operating account without first

27   submitting a formal fee application to be reviewed by the bankruptcy court under § 329, which, in

28

1 turn, will require R&E to litigate further with Uber and Google over the "reasonableness" of the

2 compensation it received for handling Mr. Levandowski's criminal case.  *Id.*  In imposing this new

3 requirement of § 329 review before any funds can be transferred, the order also denied R&E the

4 relief it had requested from the automatic stay.  (*Id.* at 2:19-21 and 4:6-9).

5        R&E now asks this Court to review the bankruptcy court's order. Because that order

6 conclusively decided a discrete dispute within the overarching case—and involved the explicit

7 denial of relief from the automatic stay—it is a final order that is immediately appealable to this

8 Court.  *See Ritzen Group, Inc. v. Jackson Masonry, LLC,* 140 S. Ct. 582, 586 (2020); 28 U.S.C. §

9 158(a).  Should the Court decide, however, that the bankruptcy order is not "final," R&E requests

10 that the Court grant leave for interlocutory review because the order raises controlling questions of

11 law for which there are substantial grounds for difference of opinion and because immediate

12 review may materially advance the ultimate termination of the litigation.  *See In re Price,* 79 B.R.

13 888, 889 (9th Cir. BAP 1988) (citing 28 U.S.C. §1292).

14                    **III.    ARGUMENT**

15 **A.    The Bankruptcy Court's Decision Is a Final Order**

16           **1.   Standard for Appeal as of Right**

17        Under 28 U.S.C. § 158(a), final orders of the bankruptcy court may be appealed to the

18 district court as of right.  Unlike a "final decision" in civil litigation under  28 U.S.C. § 1291, a

19 "final" order in bankruptcy need not resolve the entire case. *See Ritzen,* 140 S. Ct. at 586.  Instead,

20 "[o]rders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes

21 within the overarching bankruptcy case."  *Id.* (citing *Bullard v. Blue Hills Bank,* 135 S.Ct. 1686,

22 1692 (2015) .  A bankruptcy order that "conclusively resolve[s] the movant's entitlement to the

23 requested relief" is final and immediately appealable even where the "determination [is]

24 potentially pertinent to other disputes in the bankruptcy case." *Id.* at 591.  Further, a bankruptcy

25 court order is final and thus appealable if it "alters the status quo and fixes the rights and

26 obligations of the parties . . . [or] alters the legal relationships among the parties."  *In re*

27 *Gugliuzza,* 852 F.3d 884, 892 (9th Cir. 2017)  (quoting *Bullard,* 135 S.Ct. at 1692, 1695).  This

28

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATIONS BNKR. CASE NO.: 20-30242 (HLB)                    -8-

Case: 20-30242   Doc# 356-2   Filed: 12/27/20   Entered: 12/27/20 18:06:10   Page 248 of 699

48

standard, established by the Supreme Court in *Bullard,* recognizes "the distinctive character of

bankruptcy litigation," which "encompasses numerous 'individual controversies, many of which

would exist as stand-alone lawsuits but for the bankrupt status of the debtor.'" *Ritzen,* 140 S. Ct. at

586 (quoting *Bullard,* 135 S.Ct. at 1692).  And it promotes judicial economy; the Supreme Court

has recognized that "[d]elaying appeals from discrete, controversy resolving decisions in

bankruptcy cases would long postpone appellate review of fully adjudicated disputes." *Id.* at 587.

Applying this flexible standard and taking a "pragmatic" approach to finality, appellate

courts immediately review a bankruptcy court decision that resolves a discrete dispute within the

larger proceeding and affects substantive rights. *See In re Perl,* 811 F.3d 1120, 1125-26 (9th Cir.

2016).

## 2.   The Court's Order Is Final and Appealable

In its motion, R&E requested relief from the automatic stay so that it could transfer the

funds it had earned from its client trust account to its firm operating account.  (Dkt. 313 at 2:19-

21).  The bankruptcy court denied relief from the automatic stay to permit R&E to make this

transfer.  (*Id.* at 4:6-9).  *Ritzen* holds that orders granting or denying relief from the automatic stay

are final and appealable.  *Ritzen,* 140 S. Ct. at 586. On this basis alone, the bankruptcy court's

order is final and immediately appealable.  *See id.*, 140 S. Ct. at 586.

Although the order was made "without prejudice," *Ritzen* holds that the bankruptcy court

need not "preclusively resolve[] a substantive issue" for the order to be considered final under

section 158(a).  *See id.* at 591.  Indeed, as the Supreme Court in *Ritzen* acknowledged*,* the primary

issue on the stay motion in that case—whether the bankruptcy had been filed in bad faith—could

have been "urged again later in the bankruptcy case." *Id.*  And while recognizing that the issue of

bad faith was still "potentially pertinent to other disputes in the bankruptcy case," the Court

nonetheless held that the order denying stay relief was final because it "conclusively resolve[d] the

movant's entitlement to the requested relief" on the stay.  *Id.*  In the present order, the bankruptcy

court unequivocally denied the controlling question; it decided definitively that R&E had no

present right to transfer the funds that R&E and its client both stipulated it had fully earned; and it

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATIONS; BNKR. CASE NO.: 20-30242 (HLB)

-9-

Case: 20-30242   Doc# 356-2   Filed: 12/27/2020   Entered: 12/27/2020 18:06:10   Page 34 of
69

49

conclusively held that R&E was not entitled to relief from the automatic stay to do so. (Dkt. 313 at 4:6-9).  The bankruptcy court held, instead, that R&E must now commence a separate disclosure and review process under § 329 and Federal Rule of Bankruptcy Procedure 2017 ("Rule 2017") (Dkt. 313 at 21:2-8), likely to involve further litigation with Uber and Google, before it may obtain access to the flat fee retainer funds it holds.  Because R&E's requested relief has been conclusively denied on this substantive issue, the challenged order is final and appealable.

In addition, the bankruptcy court's ruling that the flat fee retainer funds constitute property of the bankruptcy estate—rather than funds fully earned by R&E under its flat fee engagement arrangement—is also a conclusion that "fixes the rights and obligations of the parties," "alters the legal relationships among the parties" and effectively disallows R&E access to the funds without additional review.  Much like the denial of stay relief, a determination that the bankruptcy estate has an ownership interest in designated property is also a discrete and significant issue affecting substantive rights; as such, it is ripe for immediate review as a final order.  *See Cutter v. Seror (In re Cutter),* 398 B.R. 6, 16 (9th Cir. B.A.P. 2008) (an order determining that the estate is entitled to designated property is final under section 158); *see also S.S. Body Armor I, Inc. v. Carter Ledyard & Milburn LLP,* 927 F.3d 763, 770 (3d Cir. 2019) (order denying stay considered final because it could prevent recovery of attorney's fees owed to counsel for debtor from prior lawsuit).  Finally, delaying review will lead the parties to engage in costly and time-consuming litigation concerning the reasonableness of R&E's legal fees before the bankruptcy court—which would be a substantial waste of resources if the bankruptcy court's threshold legal rulings requiring such review are later be deemed to be incorrect.

**B.    Interlocutory Review Is Appropriate**

Should this Court decide, however, that the order below is not final, it should nonetheless grant immediate review because it satisfies the standard for interlocutory review.

**1.  Standard**

In deciding whether to review an interlocutory bankruptcy order under 28 U.S.C. §158(c), the reviewing court borrows the standard set forth in 28 U.S.C. §1292(b).  *E.g., In re Price,*  79

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATIONS BNKR. CASE NO.: 20-30242 (HLB)
-10-

Case: 20-30242   Doc# 356-2   Filed: 12/27/20   Entered: 12/27/20 18:06:10   Page 45 of 99

50

B.R. 888, 889 (9th Cir. B.A.P. 1988).  A district court, or bankruptcy appellate panel, will thus exercise its discretion to review an order that "involves a controlling question of law as to which there is a substantial ground for difference of opinion" when "an immediate appeal may materially advance the ultimate termination of the litigation." *See id.* (citing 28 U.S.C. § 1292(b)).  There are three parts to this determination.  First, a question of law is "controlling" if "resolution of the issue on appeal could materially affect the outcome of litigation." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1981).  Second, substantial grounds for difference of opinion are deemed to exist whenever the appeal "involves an issue over which reasonable judges might differ and such uncertainty provides a credible basis for a difference of opinion." *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (citation omitted).  Interlocutory review does not depend on "a prior court's having reached a conclusion adverse to that from that which appellant seeks relief" but is proper when "fair-minded jurists might reach contradictory conclusions" on the legal issues presented.  *Id.*  In addition, such grounds exist where the controlling circuit court has not spoken on the issue and other circuits are split on the question.  *See Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).  Third, and finally, an immediate appeal need not have a dispositive effect on the case but need only "materially advance" the overall litigation.  *See Reese,* 643 F.3d at 688.

> **2.** **The bankruptcy court's holding that section 329 applies to R&E's representation of Mr. Levandowski raises a controlling question of law that is subject to fair-minded disagreement and is thus appropriate for interlocutory review.**

The central and controlling issue decided in the bankruptcy court's order, and now presented for appeal, concerns the scope of a bankruptcy court's power to review past legal fees paid to counsel who took no part in the planning, preparation, presentation, or prosecution of the debtor's bankruptcy proceeding.  It is well-settled and not disputed here that a bankruptcy court has broad powers under 11 U.S.C. § 329 to review, reduce, or even reject prior payments made by a debtor (within a year prior to a bankruptcy petition) to bankruptcy attorneys or, indeed, to attorneys *of any type* who are hired to protect assets or limit liabilities in the context of an anticipated or pending bankruptcy proceeding.

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATIONS; BNKR. CASE NO.: 20-30242 (HLB)
-11-

Case: 20-30242   Doc# 356-2   Filed: 12/27/20   Entered: 12/27/20 18:06:10   Page 51
of 99

51

1   But this case raises a very different question—a question as to which there exists very

2   "substantial grounds for difference of opinion," namely:  Does section 329 of the Bankruptcy

3   Code empower a bankruptcy court to review prepetition legal fees paid to a criminal defense

4   attorney who played no role in the debtor's bankruptcy case, performed no services aimed at

5   achieving any bankruptcy-related objective, and instead simply handled the representation of the

6   debtor in an indicted federal criminal case?

7   The answer to this question turns, as it must, on the statutory language of section 329,

8   which makes clear that bankruptcy courts are not granted *carte blanche* to review compensation

9   for any and every attorney who performed legal work for a debtor during the one-year lookback

10  period.  Rather, the statute explicitly cabins court review to only those attorneys who represented a

11  debtor "in" or "in connection with" a bankruptcy case (a "case under this title").  11 U.S.C. §

12  329(a).  Indeed, the limited scope of section 329 review is readily apparent in its first sentence,

13  where the statute defines the universe of attorneys who have the obligation to disclose their

14  compensation for court review:

15      Any attorney representing a debtor *in a case under this title,* or *in connection with* such a
        case, whether or not such attorney applies for compensation under this title, shall file with
16      the court a statement of the compensation paid or agreed to be paid, if such payment or
        agreement was made after one year before the date of the filing of the petition, for
17      services rendered or to be rendered in contemplation of or in connection with the case by
        such attorney, and the source of such compensation.
18

19  11 U.S.C. §329(a) (emphasis added).  Section 329(b) then goes on to say that a bankruptcy court

20  may review and disallow any "such compensation" to the extent it is deemed to be "excessive."

21  11 U.S.C. §329(b).  It does not broaden the pool of attorneys whose compensation is swept in for

22  review.

23  The Ninth Circuit has not decided a case addressing the breadth or scope of section 329

24  review.  But as both the Third and Fourth Circuits have recognized, the statutory text of section

25  329 makes plain that it does not reach attorneys whose work had no meaningful connection to the

26  pending bankruptcy proceeding or to the myriad financial claims and conflicts a bankruptcy case

27  is meant to resolve.  11 U.S.C. § 329(a).  *See In re Bressman*, 327 F.3d at 240 (section 329

28

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATIONS BNKR. CASE NO.: 20-30242 (HLB)
-12-

Case: 20-30242   Doc# 356-2   Filed: 12/27/20   Entered: 12/27/20 18:06:10   Page 52 of 99

52

"speaks only of fees paid for representation of the debtor in a case under the Bankruptcy Code or in connection with such a case") (emphasis added); *In re Walters*, 868 F.2d 665, 667 (4th Cir. 1989) ("Certain services by attorneys ... are so unconnected to bankruptcy that a bankruptcy court is without jurisdiction to review them under § 329."). The Fifth Circuit has similarly held that section 329 does not apply "as to those services rendered by [counsel] that were unrelated to the bankruptcy proceeding." *In re Hargis*, 895 F.2d 1025, 1026 (5th Cir. 1990) (emphasis added); see also *In re Hargis*, 148 B.R. 19, 21 (Bankr.N.D.Tex. 1991) (applying section 329 to "acts undertaken by an attorney which enhance, preserve, litigate or discharge [] liabilities or affect assets") (on remand); *In re Swartout*, 20 B.R. 102, 106 (Bankr. S.D. Ohio 1982) (representation of the debtor in a divorce action held to be outside the scope of section 329).

Here, the factual record was undisputed: the sole focus of R&E's representation was to defend Mr. Levandowski against a federal criminal indictment; R&E played no role whatsoever in any aspect of Mr. Levandowski's bankruptcy case; and R&E's work did not otherwise embrace any bankruptcy-related objective.  (Dkt. 235 at ¶¶ 4-7; Dkt. 236 at ¶¶ 7-8).  Yet in holding that R&E's fees were nevertheless subject to section 329 review, the bankruptcy court jettisoned the "in connection with [the bankruptcy case]" test mandated by the statute and opted instead for a novel and unsupported "same set of facts" test.  In other words, rather than correctly asking whether R&E's legal work was aimed at supporting Mr. Levandowski's position in bankruptcy or whether it otherwise touched upon some claim or controversy at issue in the bankruptcy proceeding—as the "in connection with bankruptcy" standard requires—the bankruptcy court asked instead whether the criminal case and the bankruptcy petition somehow "arose" from the "same set of facts." (Dkt. 313 at 21:13-16).  The bankruptcy court cited no supporting precedent for this starkly different—and textually untethered—test to define the category of attorneys who come within the purview of section 329 review; nor has R&E found any cases supporting this alternate standard.

But to make matters worse, the bankruptcy court then applied this erroneous legal test to a flawed factual assumption.  Without any supporting citations to the factual record, the bankruptcy

MOTION FOR LEAVE TO APPEAL ORDER DENYING RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF STIPULATIONS; BNKR. CASE NO.: 20-30242 (HLB)

-13-

1  court concluded that the criminal trade secrets case and the bankruptcy matter were "connected at

2  their very core" because "Mr. Levandowski's theft of trade secrets . . . *led not only to the $170*

3  *million arbitration award that precipitated this bankruptcy*, but also to the criminal referral by the

4  judge presiding over the Waymo Litigation" and, in turn, to Mr. Levandowski's indictment. (Dkt.

5  313 at 21:17-26)  (emphasis added).  In truth, however, as Google would undoubtedly

6  acknowledge, the *theft of trade secrets had absolutely nothing to do with the arbitration award*

7  that precipitated Mr. Levandowski's bankruptcy.  The arbitration was based on entirely separate

8  allegations of misconduct—such as the breach of contract, breach of fiduciary duty, and breach of

9  the duty of loyalty.  To quote Judge Alsup himself, the judge who presided over the Waymo

10 litigation and referred Mr. Levandowski for criminal investigation, the "gravamen" to the

11 arbitration proceedings brought against Mr. Levandowski "is Waymo's allegations of employee

12 poaching by Levandowski. *Neither proceeding has anything to do with Waymo's claims of trade*

13 *secret misappropriation against defendants here*." *See Waymo,* No. 17-cv-00939, Dkt. 425 at 2:7-

14 14 (emphasis added).

15      As R&E emphasized in its briefing below, the most authoritative case on the question of

16 whether section 329 review applies to criminal defense counsel is *In re Bressman,* a 2003 decision

17 in which the Third Circuit held that section 329 review does not apply to criminal defense counsel

18 who plays no direct or indirect role in the bankruptcy case.  *Bressman,* 327 F.3d. at 240-41.

19 Because criminal counsel in that case did nothing "other than provide representation to the Debtor

20 in the criminal proceedings against him," the court rejected the Trustee's argument that the

21 services were rendered "in connection with" the bankruptcy case.  *Id.* at 241.  Notably, unlike the

22 circumstances presented here, the criminal defense firm in *Bressman* did have some limited

23 engagement in the debtor's bankruptcy proceeding, including providing advice to the debtor that

24 he assert the Fifth Amendment in the case, reviewing some bankruptcy documents, and holding

25 conversations with bankruptcy counsel.  *Id.*  But the court held that these limited activities did not

26 mean that the firm was representing the debtor "in connection with" the bankruptcy case; rather, it

27 was simply part of the firm's effort to provide effective representation in the criminal case.  *Id.*

28

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATIONS BNKR. CASE NO.: 20-30242 (HLB)                    -14-

Case: 20-30242   Doc# 356-2   Filed: 12/27/20   Entered: 12/27/20 18:06:10   Page 54
of 99                                                                          54

1    Nor did counsel's work in supporting the entry of a guilty plea in *Bressman*, which paved the way

2    for certain civil settlements, bring the representation within the scope of section 329, because, the

3    court reasoned, these civil settlements were mere "side effects." *Id.*  The *Bressman* court reasoned

4    that, when criminal counsel was not directly involved in issues that would impact the bankruptcy

5    proceeding, any such ancillary "side effects" on the bankruptcy action brought about by the

6    criminal case did not satisfy the requirement of section 329 that an attorney's representation be "in

7    connection with" a bankruptcy proceeding.  *Id.* at 241.

8          Because R&E's representation of Mr. Levandowski was likewise limited to the criminal

9    matter and had no impact on the assets or liabilities at issue in the bankruptcy, R&E relied on the

10   decision in *Bressman*—the only federal circuit authority on point—to argue that its compensation

11   should also be regarded as outside the reach of section 329 review.  But the bankruptcy court's

12   order made no mention of *Bressman,* nor any attempt to distinguish the Third Circuit's holding or

13   reasoning from the present case.  Instead of addressing this 2003 federal circuit court precedent,

14   the bankruptcy court relied exclusively on two older bankruptcy court decisions, *In re Rheuban*,

15   121 B.R. 368 (Bankr. C.D. Cal. 1990) and *Wootten v. Ravkind (In re Dixon)*, 143 B.R. 671

16   (Bankr. N.D. Tex., 1990).  (Dkt. 313 at 24-26).

17         But as R&E explained in its briefing below, both *Rheuban* and *Dixon* are readily

18   distinguishable because (contrary to the situation presented here) the services provided by counsel

19   in these cases were not limited to criminal matters and were not actually separate from the

20   bankruptcy proceedings.  In *Rheuban*, for instance, counsel had been retained to participate in

21   regulatory actions concerning the same financial and business matters of the savings and loan that

22   the debtor had sought to reorganize in the bankruptcy action; the court thus determined that

23   criminal counsels' representation would have a direct and ongoing effect on the bankruptcy case.

24   *See Rheuban,* 121 B.R. at 377-78.  Similarly, in *Dixon,* criminal counsel participated with

25   bankruptcy lawyers in bankruptcy planning and undertook representation in civil suits with the

26   FDIC in connection with the debtor's savings and loan—proceedings that directly concerned the

27   assets and liabilities at issue in the bankruptcy action.  *See Dixon,* 143 B.R. at 675, n. 3.

28

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATIONS BNKR. CASE NO.: 20-30242 (HLB)

-15-

55

Here, unlike in *Rheuban* and *Dixon*, the record below was undisputed that the work Mr. Levandowski hired R&E to perform had no connection to the bankruptcy proceeding, nor any relation to the assets, liabilities, or other financial rights and obligations at issue in Mr. Levandowski's bankruptcy.  (Dkt. 235, ¶¶ 4-7; Dkt. 236, ¶¶ 6-8).  The bankruptcy court did not, however, address the significant factual differences between the nature of R&E's work here and the bankruptcy-related work at issue in the two ill-fitting bankruptcy court decisions upon which the order relied.

In seeking to further justify the application of section 329, the bankruptcy court made two other significant legal errors.  *First,* the court cited to a declaration that Mr. Levandowski submitted early in the case (later withdrawn) asking that the court to appoint R&E as special counsel (without any request for further compensation) under section 327(e) of the bankruptcy code.  The bankruptcy treated this as support for the notion that R&E's representation must have been "related" to the bankruptcy proceeding.  (Dkt. 313 at 19:21-20:7).  But this is a red herring.  The test for appointment under section 327(e)—whether counsel's retention would be "in the *best interest* of the estate" now—is entirely different from the standard for section 329 review, which is whether the attorney's work was "in connection with" the bankruptcy case.  And because it merely suggested potential ancillary benefits that Mr. Levandowski believed would flow to the estate going forward, his declaration has no relevance to whether section 329 properly applies to R&E's past work on the criminal case.  Further, even if the question of collateral benefit were relevant to the section 329 inquiry (it isn't), the suggestion that R&E's criminal representation rendered genuine benefit to the estate was tenuous at best; as R&E explained in its brief below, "[a]lmost all courts that have addressed the issue have *held that criminal defense counsel does not benefit the estate.*" *See In re Kearney*, 609 B.R. 383, 387 (Bankr. D.N.M. 2019) (collecting cases)(emphasis added); (Trustee's Response, Dkt. 63, ¶ 33).

In discussing this side question of potential "benefit" to the estate, the bankruptcy court observed that R&E's representation would benefit the estate by seeking "to reduce Mr. Levandowski's prison sentence, which would permit him to work and contribute his *post-petition*

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATIONS BNKR. CASE NO.: 20-30242 (HLB)                            -16-

Case: 20-30242    Doc# 356-2    Filed: 12/27/2020    Entered: 12/27/2020 18:30:10    Page 56 of 99

56

*earnings* (*which are property of the estate*) to his creditors. (Dkt. 313 at 20:1-7) (emphasis added). But this conclusion is also mistaken as a matter of law since, in Chapter 11 cases, the Ninth Circuit has definitively excluded from estate all post-petition earnings resulting from the debtor's personal services. *In re Fitzsimmons*, 725 F.2d 1208, 1211 (9th Cir. 1984). Equally erroneous is the court's reliance on R&E's efforts to negotiate and advocate for reduced restitution (Dkt. 313 at 20:1-3); courts have repeatedly held that the negotiation of criminal monetary payments is too speculative to qualify as a benefit to the estate. *See In re French*, 139 B.R. 485, 490 (Bankr. D.S.D. 1992), *citing In re Duque*, 48 B.R. 965, 975 (S.D. Fla. 1984); *see also Dixon*, 143 B.R. at 679 (benefit to the estate from favorable resolution of RICO charges entirely speculative).

Put simply, under the authority of cases interpreting section 327(e), R&E's criminal defense work for Mr. Levandowski (in his individual capacity) is not deemed to "benefit" his bankruptcy estate as a matter of law. But again, the main problem with the bankruptcy court's analysis of collateral benefit to the estate is that once again asks the wrong question. The only question for purposes of determining whether section 329 applies at all is whether the work R&E was hired to perform was either "in" or "in connection with" the bankruptcy proceeding. It was not.

The final critical error in the bankruptcy court's section 329 analysis is the suggestion that R&E's own knowledge of the possibility that Mr. Levandowski might someday file bankruptcy automatically sweeps its work on the criminal case within the ambit of section 329. The bankruptcy court found that, because R&E's awareness of the possibility of bankruptcy may have influenced R&E's decision to ask for a flat fee, rather than hourly, retainer agreement with Mr. Levandowski, the court concluded that R&E's work was "in contemplation of" bankruptcy and therefore covered by section 329. (Dkt. 313 at 22:14-24, 27:14-20). But again, this too is asking the wrong question as a matter of law.

The cases in which courts have applied an "in contemplation of" test to satisfy the "in connection with" requirement do not consider the attorney's motivation or state of mind, but instead look only to the debtor's subjective purpose in retaining counsel. Under this standard, "the

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATIONS; BNKR. CASE NO.: 20-30242 (HLB)

-17-

Case: 20-30242   Doc# 355-2   Filed: 12/17/20   Entered: 12/17/20 18:06:10   Page 157
of 199

57

1  controlling question is with respect to the *state of mind of the debtor* and whether the thought of

2  bankruptcy was the impelling cause of the transaction." *Conrad, Rubin & Lesser v. Pender,* 289

3  U.S. 472, 477 (1933)(emphasis added).  The "in contemplation of" standard "relate[s] only to the

4  state of mind of the debtor, and not to what his lawyer thinks about." *In re Newton,* 292 B.R. 563,

5  568 (Bankr. E.D. Tex. 2003) (citation omitted).   And in applying this test, the court must still

6  consider the purpose of the work for which the attorney received payment; for even when the

7  debtor is aware of his imminent bankruptcy, section 329 does not reach compensation paid to an

8  attorney if "[t]he payment was not for services rendered or to be rendered in connection with" the

9  bankruptcy matter from the standpoint of the debtor.  *Id.* at 569 (payment to an attorney for debt

10  owed from prior work was held not to be within the scope of section 329).

11      As R&E explained in its briefing below, cases that have applied this "in contemplation of"

12  standard under section 329 examine whether the "impelling" purpose driving the debtor's decision

13  to retain counsel was a desire to achieve a favorable result in the bankruptcy action.  It is not

14  simply whether bankruptcy was "contemplated" at the time of the attorney's representation.  This

15  basic point is well illustrated in cases that address hybrid engagements, where the same attorney

16  did both bankruptcy and non-bankruptcy-related work (and thus clearly had bankruptcy in

17  contemplation).  In these hybrid cases, courts carefully sift through the attorney's billing entries to

18  separate bankruptcy work from non-bankruptcy work, and subject only the former category to

19  section 329 review, leaving the latter fee entries unreviewed and undisturbed.  *See Hargis*, 895

20  F.2d at 1026 (remanding the case to determine which fees were "for services rendered on matters

21  unrelated to the bankruptcy proceeding"); *Beirne, Maynard & Parson, L.L.P. v. Cypresswood*

22  *Land Partners*, 2010 U.S. Dist. LEXIS 146549 at **12-13 (S.D. Tex. 2010) (where counsel

23  represented an individual as a debtor in an involuntary bankruptcy case as well as in separate

24  personal matters, the fees for representation in the separate personal matters were not subject to

25  section 329 review); *In re Hooper,* 2001 Bankr. LEXIS 2379 at **43-45 (Bankr. E.D.Va. 2001)

26  (where counsel represented a debtor in numerous matters, including bankruptcy proceedings, the

27  court determined that amounts billed to "trust" account constituted fees for services unrelated to

28

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATIONS; BNKR. CASE NO.: 20-30242 (HLB)

-18-

1  the bankruptcy case and thus fell outside the scope of the court's section 329 review); *In re*
2  *Telemaintenance, Inc.*, 157 B.R. 352, 354-55 (Bankr. N.D. Ohio 1993) (where counsel represented
3  corporate debtor in various matters, including the bankruptcy, fees for non-bankruptcy work
4  related to union issues were neither "in connection with" nor "in contemplation of" bankruptcy).
5  The logic underpinning these hybrid cases demonstrates the error of focusing on counsel's own
6  contemplation of bankruptcy, rather than the debtor's subjective purpose in hiring counsel's
7  services.  The bankruptcy court did not, however, mention or distinguish any of these hybrid cases
8  in its order.

9       Finally, the bankruptcy court correctly emphasizes the valid policy goal of protecting
10  creditors against overly generous contracts between debtors and their counsel; indeed, the
11  animating goal of section 329 is to shield creditors and debtors from such potential favoritism or
12  overreach.  By its express statutory terms, however, section 329's reporting and review
13  requirements apply only to attorney's fees paid by a debtor during the one-year lookback period
14  for representation in a case "under this title" or "in connection with such a case."  11 U.S.C. § 329.
15  *See* Dkt. 234 at 8:1-25.  If Congress had wanted to extend the reach of section 329 to every
16  attorney engagement without limitation—as it certainly could have—it would have said so by
17  omitting this clear limiting language.  But Congress chose instead to include language that
18  explicitly cabins the category of attorneys whose fees are subject to the bankruptcy court's review.

19       The Ninth Circuit has recently warned against the temptation to judicially broaden the
20  boundaries of the limited grants of jurisdiction given to the bankruptcy courts by Congress:
21  "Whatever equitable powers remain in the bankruptcy courts must and can only be exercised
22  within the confines of the Bankruptcy Code."  *Albert-Sheridan v. State Bar of Cal. (In re Albert-*
23  *Sheridan)*, 960 F.3d 1188, 1195 (9th Cir. 2020) (quoting *Nw. Bank Worthington v. Ahlers*, 485 U.S.
24  197, 206 (1988)).  The question is not whether the policy rationale would support a broad reach
25  for the bankruptcy court's reviewing powers, but rather how broad is the reach that was enacted
26  into law.  And it is the language that a statute employs, not its animating purpose, that defines how
27  broadly Congress chose to sweep in implementing its policy goals.  As the Ninth Circuit

28

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATIONS BNKR. CASE NO.: 20-30242 (HLB)
-19-

Case: 20-30242   Doc# 356-2   Filed: 12/27/20   Entered: 12/27/20 18:06:10   Page 59 of
699

59

1  cautioned: "the Supreme Court has consistently reminded us of our duty to follow the law as

2  enacted by Congress, not as judged by our convictions." *Id.*; *Pavelic & LeFlore v. Marvel Entm't*

3  *Grp.*, 493 U.S. 120, 126 (1989) ("Our task is to apply the text, not to improve upon it.").  And

4  further, "when it comes to interpreting the Code, [courts[ are not at liberty to 'alter the balance

5  struck by the statute.'" *Id.* (quoting *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 987 (2017)).

6      **3.  Whether the funds belong to the bankruptcy estate raises a controlling question of**
7          **law that is subject to fair-minded disagreement and thus appropriate for**
          **interlocutory review.**

8          Separate and apart from the section 329 issue, the bankruptcy court's holding that the

9  retainer funds held by R&E constitute property of the bankruptcy estate also raises a distinct and

10  controlling question of law that the Ninth Circuit has not addressed: namely, whether "flat fee" or

11  "advance payment" retainers held in compliance with the California Rules of Professional

12  Conduct constitute property of the bankruptcy estate.  Contrary to the conclusion reached by the

13  bankruptcy court here, lower courts within the Ninth Circuit have routinely held that prepetition

14  advance payment or flat fee retainers—where a client pays a fixed fee in advance for a defined

15  scope of services to be rendered—are *not* property of the bankruptcy estate, even when the client

16  retains a possible right of refund with respect to any unearned fees.  *See In re Rodenbough*, 2018

17  Bankr. LEXIS 3192 at *10, *20-21 (D. Idaho 2018) ; *In re Alvarado*, 496 B.R. 200, 212 (N.D.

18  Cal. 2013) (prepetition flat fees "are not estate property").  Indeed, in *Rodenbough*, a case from

19  Idaho involving substantively identical rules as apply in California, the court held squarely that

20  prepetition flat fee or advance payment retainers are "not property of the estate" but instead

21  "belong to the attorney when transferred, [even] though the attorney is still obligated to earn the

22  fees prepaid and refund to the client any unearned portion of the retainer when the attorney's

23  representation ends."  *Rodenbough*, 2018 Bankr. LEXIS 3192 at *10 (quoting *In re Blackburn*,

24  448 B.R. 28, 38 (Bankr. D. Idaho 2011)).

25          The bankruptcy court did not discuss *Rodenbough*.  Rather, it reached a contrary

26  conclusion on the estate property issue based primarily on the very conservative (and client-

27  protective) manner in which R&E held the flat fee funds. The bankruptcy court placed great

28

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATION; BNKR. CASE NO.: 20-30242 (HLB)
-20-

Case: 20-30242   Doc# 356-2   Filed: 12/27/20   Entered: 12/27/20 18:06:10   Page 460
of 599

60

1    reliance on the fact that R&E had retained the funds at issue in its client trust account rather than

2    moving the funds over to its operating account before the petition was filed; the court viewed this

3    as a failure to treat the funds as "earned." (Dkt. 313 at 17:25-18:2).  And thus, in the court's view,

4    the "actual treatment" of the flat fee payments—"which assumed that any unearned fees would be

5    refunded"—somehow "means the Funds remain property of the bankruptcy estate." *(Id.* at 18:17-

6    19:2).

7         There are two problems with the bankruptcy court's conclusion in this regard.  First,

8    R&E's practice actually complied with the California Rules of Professional Conduct ("CPRC").

9    The governing rules of the CPRC direct attorneys to keep flat fee retainers in their client trust

10   account until the client and attorney have reached agreement that the funds have been

11   unambiguously earned (unless there was advance written approval from the client that the flat fee

12   could be deposited immediately into the attorney's operating account—which, of course, is not a

13   requirement). CRPC Rules 1.15(a) and 1.15(c)(2), which (absent client consent to other

14   arrangements) require "[a]ll funds received or held by a lawyer or law firm for the benefit of a

15   client . . . including advances for fees" to be held in a client trust account, and require attorneys to

16   withdraw "the portion belonging to the lawyer or law firm . . . at the earliest reasonable time after

17   the lawyer or law firm's interest in that portion becomes fixed."  CRPC Rules 1.15(a) and

18   1.15(c)(2).

19        The second problem is that the court's holding is in direct tension with the 2018

20   *Rodenbough* decision—involving virtually the same rules as apply in California—and Chief Judge

21   Hamilton's 2013 decision in *Alvarado*, both of which support R&E's position that the prepetition

22   retainer funds were not, and are not, part of the bankruptcy estate.  But in reaching the contrary

23   conclusion, the bankruptcy court neither cited to nor explained why this powerful authority should

24   be set aside.

25        In short, much like the question of whether section 329 review applies to R&E's

26   representation, the question of whether the prepetition funds R&E holds are part of the bankruptcy

27

28

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATION; BNKR. CASE NO.: 20-30242 (HLB)                -21-

Case: 20-30242   Doc# 356-2   Filed: 12/27/2020   Entered: 12/27/2020 18:06:10   Page 2561 of 699

61

1   estate is an issue about which fair-minded jurists can disagree, and one in which there is no

2   controlling Ninth Circuit authority—thus allowing substantial ground for difference of opinion.

3                                    **IV.    CONCLUSION**

4          In its 2020 decision in *Ritzen*, the Supreme Court reaffirmed that in bankruptcy

5   proceedings, appellate review of orders resolving intermediate disputes, is often the most efficient

6   and prudent path to resolving a discrete dispute and avoiding wasted effort by the litigants and the

7   courts, *See Ritzen,* 140 S.Ct. at 587 (noting that "controversies adjudicated during the life of a

8   bankruptcy case may be linked, one dependent on the outcome of another").  Delaying review of

9   such decisions can result in the "untoward consequence" of requiring "the bankruptcy court to

10  unravel later adjudications rendered in reliance on an earlier decision." *Id.*  That is exactly what

11  we are attempting to avoid here.  If the bankruptcy court's controlling determinations on the scope

12  of section 329 and the estate's interest in the retainer funds are only later reviewed on appeal and

13  only then deemed incorrect, the bankruptcy court, R&E, Uber, and Google would all have been

14  put to the unnecessary expenditure of time and resources, and the bankruptcy could would be left

15  to unravel later adjudications flowing directly from these two controlling legal decisions that are

16  ripe and suitable for appellate review now.

17         For all the reasons stated herein, we respectfully request that the Court review the

18  bankruptcy court's order.

19

20  Dated:  December 17, 2020                Respectfully submitted,
                                             RAMSEY & EHRLICH LLP
21

22                                           By:  /s/ _____

23                                                 Miles Ehrlich

24

25

26

27

28

MOTION FOR LEAVE TO APPEAL ORDER DENYING
RAMSEY & EHRLICH'S MOTION FOR APPROVAL OF
STIPULATION; BNKR. CASE NO.: 20-30242 (HLB)

-22-

Case: 20-30242   Doc# 356-2   Filed: 12/17/20   Entered: 12/17/20 18:06:10   Page 62 of 99

62

**EXHIBIT A**



Entered on Docket
December 03, 2020
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: December 2, 2020

_____
HANNAH L. BLUMENSTIEL
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re:

ANTHONY SCOTT LEVANDOWSKI,

    Debtor.
_____

)   Case No. 20-30242 HLB
)
)   Chapter 11
)
)
)

## ORDER DENYING RAMSEY & EHRLICH LLP'S MOTION FOR APPROVAL OF STIPULATION WITH DEBTOR

This case comes before the court on Ramsey & Ehrlich LLP's ("R&E") motion,[1] which requests approval of a stipulation[2] between it and Mr. Levandowski related to compensation to be paid to R&E as his counsel in a federal criminal trade secrets case.[3]

The Stipulation, dated July 22, 2020, represents that Mr. Levandowski employed R&E pursuant to a November 6, 2019 engagement agreement,[4] which provided for a flat fee/advanced payment retainer of $5.0 million for services beginning on October 1, 2019 (the "Flat Fee").

_____

[1] Dkt. 161 (the "Motion").

[2] Dkt. 161, Ex. A (the "Stipulation").

[3] See United States v. Levandowski, Case No. 3:19-cr-00377 (N.D. Cal. 2019) (the "Criminal Case").

[4] Dkt. 162, Ex. A (the "Engagement Agreement").

1      The Stipulation also states that R&E retains, in its client

2 trust account, $1,529,968.82 in fees (the "<u>Funds</u>") paid pre-

3 petition, by or on behalf of Mr. Levandowski for representation

4 in the Criminal Case, and seeks approval of the transfer of the

5 Funds to its operating account.  The Stipulation summarizes the

6 rest of the agreement between Mr. Levandowski and R&E as follows:

7

8    (1)   R&E's obligations as counsel in the Criminal Case were

9 fully performed upon Mr. Levandowski's sentencing on August 4,

10 2020;

11    (2)   R&E had fully earned the entirety of the Flat Fee at

12 that time;

13

14    (3)   R&E's interest in the Flat Fee, which includes the

15 Funds in its client trust account, was fully earned, fixed and

16 undisputed at that time;

17    (4)   The Funds are not property of the bankruptcy estate and

18 are not subject to the automatic stay; and

19

20    (5)   To the extent that the automatic stay applies, the

21 court should grant relief from the stay pursuant to section

22

23

24

25

26

27

28

362(d)[5] to allow the transfer of the Funds as required by CRPC
Rule 1.15(c).[6]

Uber Technologies, Inc. ("Uber") and Google LLC ("Google")
filed objections[7] to the Motion on August 6, 2020, seeking a
review of the compensation claimed by R&E for reasonableness,
given that R&E has not submitted detailed time or expense records
to the court.  The Oppositions also seek additional information,
which they contend will facilitate the court's effort to
determine the reasonableness of the fees.

In a reply,[8] filed on August 11, 2020, R&E asserts that its
compensation, as a flat fee/advanced payment retainer, is not
property of the bankruptcy estate and that its Motion only
requests permission to transfer the Funds from the client trust
account to its operating account in compliance with CRPC Rule
1.15.

[5] Unless otherwise indicated, all statutory citations shall refer to Title 11
of the United States Code, aka the "Bankruptcy Code"; all citations to a
"Bankruptcy Rule" shall refer to one of the Federal Rules of Bankruptcy
Procedure; all citations to a "B.L.R." shall refer to one of the Bankruptcy
Local Rules for the United States Bankruptcy Court for the Northern District
of California; and all citations to a "Civil Rule" shall refer to the Federal
Rules of Civil Procedure.

[6] All citations to "CRPC" shall refer to one of the California Rules of
Professional Conduct.

[7] Dkt. 188 ("Google Opposition") and Dkt. 189 ("Uber Opposition"), together
(the "Oppositions").

[8] Dkt. 195 (the "Reply").

1    The court convened a hearing on the Motion on August 13,

2  2020, at which the parties presented arguments, and the court

3  requested additional briefing.[9]  After the timely submission of

4  supplemental briefs,[10] the court took the matter under

5  advisement.

6    Based upon the court's analysis of the foregoing pleadings

7  and consideration of the parties' arguments, R&E's Motion is

8  hereby **DENIED WITHOUT PREJUDICE**.

9

10   **A. JURISDICTION**

11   This court has jurisdiction over this contested matter that

12 this court may hear and determine, pursuant to 28 U.S.C.

13 §§ 157(a) and (b) and 1334(b) and General Order 24 of the United

14 States District Court for the Northern District of California.

15 This contested matter constitutes a core proceeding under 28

16 U.S.C. § 157(b)(2)(A) and (G).  The parties also have consented

17 to the entry of an order resolving this contested matter, which

18 provides further support for the court's subject matter

19 jurisdiction.[11]

20

21

22

23 ───────────────

24 [9] See Dkt. 200 (the "Scheduling Order").

25 [10] These supplemental briefs include:  (1) R&E's supplemental brief in support of the Motion (Dkt. 234; the "Motion Supplement"); (2) Uber's supplemental opposition (Dkt. 266); (3) Google's supplemental opposition (Dkt. 267); and (4) R&E's supplemental reply (Dkt. 275).

26

27 [11] Wellness Intern. Network Ltd. v. Sharif, 135 S. Ct. 1932, 1949 (2015) (holding that "Article III permits bankruptcy courts to decide [statutorily core but constitutionally non-core] claims submitted to them by consent").

28

**B. BACKGROUND**

Mr. Levandowski first retained R&E on an hourly-fee basis in March 2017 after he was accused of stealing trade secrets from Google.  Specifically, R&E's engagement pertained to Mr. Levandowski's actions involving the conveyance of information central to Google's self-driving car technology and his role as a witness in a lawsuit brought by Waymo LLC ("Waymo"), Google's self-driving car subsidiary, against Uber.[12]

In May 2017, after a criminal referral by the presiding judge in the Waymo Litigation, the U.S. Attorney's Office for the Northern District of California opened a criminal investigation into Mr. Levandowski's conduct.[13]  R&E continued to represent Mr. Levandowski during the U.S. Attorney's criminal investigation on an hourly-fee basis,[14] which proceeded while he was embroiled in both the Waymo Litigation and in an arbitration commenced against him by Google (the "Arbitration").[15]

---

[12] See Waymo LLC v. Uber Techs., Inc., Case No. C 17-00939 WHA, 2017 WL 2694191 (N.D. Cal. June 21, 2017) (the "Waymo Litigation").

[13] See Dkt. 267, p. 6.

[14] See Dkt. 103-1, p. 2.

[15] See Dkt. 64, p. 2.

In March 2019, the Arbitration panel entered an interim award against Mr. Levandowski in the amount of $127.0 million.[16] In July 2019, Mr. Levandowski retained bankruptcy counsel.[17]

On August 15, 2019, a grand jury indicted Mr. Levandowski on thirty-three felony counts of trade secret theft, stemming from his misappropriation of Google's self-driving vehicle technology.[18]  R&E appeared as special counsel for Mr. Levandowski in the Criminal Case on August 27, 2019, and on September 2, 2019, R&E made its formal appearance in that case as Mr. Levandowski's counsel of record.

It was not until November 6, 2019, nearly three years after Mr. Levandowski initially retained R&E on an hourly-fee basis for its services in connection with his theft of trade secrets, that the fee arrangement changed.[19]  The new Engagement Agreement offered two alternatives for payment of R&E's legal fees.[20]

Option A was explained in a provision entitled "Hourly Fee Agreement/Third Party Fee Agreement and Security Deposit."[21]

---

[16] See Dkt. 19-1, p. 141.

[17] See Dkt. 22, ¶ 6.

[18] See Dkt. 64, p. 4.

[19] See Dkt. 267, p. 6; Dkt. 162, Ex. A.

[20] See Dkt. 165, ¶ 1.

[21] See Dkt. 165, Ex. A.

Under Option A, R&E would bill for its services by the hour, at rates that could be changed after notice and which would be charged against security deposits placed with R&E.  Option A required an initial $1.0 million advance payment to be placed in R&E's client trust account <u>before</u> the performance of additional legal services, and further required that a third party enter into an agreement to provide further security deposits of $2.0 million by January 1, 2020, and $2.0 million on February 1, 2020, for a total of $4.0 million, to be placed in R&E's trust account and used only to pay delinquent invoices for legal services.

Option B was set forth in a provision entitled "Prepaid Flat Fee/Advance Payment for Costs and Expenses."[22]  It provided that the legal fee for services to be rendered from October 1, 2019 to the end of the first trial (or other alternative resolution) would be $5.0 million (the Flat Fee).  It provided that the Flat Fee "is fixed and does not depend on the amount of work performed or the results obtained.  Client acknowledges that this fee is negotiated and is not set by law."[23]

Under the terms of Option B, Mr. Levandowski would pay the Flat Fee in four installments:  $1.0 million on November 6, 2019 (the date of the Engagement Agreement); another $1.0 million on

_____

[22] <u>Id.</u>

[23] <u>Id.</u>

January 7, 2020; a third $1.0 million on January 31, 2020; and $2.0 million on February 15, 2020.[24]  Option B makes no mention of whether the Flat Fee would be placed in R&E's trust account or its operating account, specifying only that an immediate deposit of $250,000 would be placed in a trust account to cover costs and expenses as they were incurred.

Mr. Levandowski selected Option B, a choice he explained as follows:

> I was advised by Mr. Ramsey [R&E attorney] that because of the possibility that I might have to commence a bankruptcy case, R&E would not agree to represent me on an hourly basis without a third-party payment or third-party guarantee of payment.[25]

On March 4, 2020 (the "<u>Petition Date</u>"), Mr. Levandowski voluntarily filed a Chapter 11 bankruptcy petition in this court.[26]  R&E represented that, sometime before the Petition Date, Mr. Levandowski made several installment payments toward the $5.0 million Flat Fee but had not yet paid the entire amount.[27]  Specifically, Mr. Levandowski had paid approximately 31% of the Flat Fee, or $1,537,018.82.[28]  According to R&E, it

---

[24] <u>See</u> <u>id.</u>

[25] <u>See</u> Dkt. 265, ¶ 4.

[26] <u>See</u> Dkt. 1.

[27] <u>See</u> Dkt. 161, Ex. A, ¶ B.

[28] <u>See</u> <u>id.</u>, ¶ C.

has since withdrawn only $7,050 to pay a third-party expense and holds the remainder of the Funds in its client trust account.[29]

On August 21, 2020, counsel for Google sent a letter to R&E requesting a breakdown of the $1,537,018.82 and asking for the dates and amounts of each payment R&E received related to the November 6, 2019 Engagement Agreement.[30]  On August 31, 2020, counsel for R&E replied with a report (the "Client Funds Report") detailing all of the deposits into and disbursements from Mr. Levandowski's client trust account since the beginning of its retention in March 2017.[31]

As Google notes in its Supplemental Opposition, the Client Funds Report confirms that, pursuant to the Engagement Agreement, about $1.5 million was paid by or on behalf of Mr. Levandowski prior to the Petition Date, and those monies now reside in an R&E client trust account.[32]  The first and largest payment in the amount of $1.0 million dollars was apparently made on October 18, 2019 on behalf of Mr. Levandowski by "Rad Urban," a company with which Mr. Levandowski had a financial relationship prior to the

---

[29] See id., p. 7.

[30] See Dkt. 267-1, Ex. A.

[31] See Dkt. 267-1, Ex. B.

[32] See Dkt. 267, p. 8.

execution of the Engagement Agreement.[33]  Mr. Levandowski did not

personally make any payments toward the Flat Fee until the day

before the Petition Date, or March 3, 2020, when he paid R&E

$950,000.[34]  He then paid R&E another $200,000 on the Petition

Date.[35]  It does not appear that Mr. Levandowski or any other

party paid the deposit of $250,000 for costs and expenses.

Neither Mr. Levandowski nor any other entity has made any

additional payments toward the Flat Fee.

On March 19, 2020, Mr. Levandowski entered a guilty plea in

the Criminal Case, and he was sentenced on August 4, 2020.  As of

that date, R&E claims to have fully completed its representation

of Mr. Levandowski under the terms of the Engagement Agreement,

thereby having fully earned its Flat Fee.

On April 8, 2020, Mr. Levandowski filed a verified

application[36] to employ R&E as special criminal counsel pursuant

to section 327(e) and Bankruptcy Rule 2014(a).  In the

Application, Mr. Levandowski represented that the Engagement

Agreement set forth the services that R&E anticipated performing,

which included advising him with respect to his plea bargain and

---

[33] Id.; see also Dkt. 267-1, Ex. B.

[34] Id.

[35] Id.

[36] Dkt. 36 (the "Application").

sentencing and his obligation to make criminal restitution after the Petition Date.[37]

The Application, which Mr. Levandowski submitted under penalty of perjury, states that R&E's employment would benefit the estate because the firm would:  (1) advocate and obtain from the court in the Criminal Case approval of the "successful negotiation" with the Department of Justice of a restitution payment due at his sentencing; (2) assist in lowering the amount of his restitution payment, thereby providing more funds for distribution to his creditors; and (3) negotiate to avoid or reduce the prison time in any sentence that might be imposed, thus enabling Mr. Levandowski to work and earn funds to increase the value of his estate.[38]

In support of the Application, Mr. Ismail Ramsey submitted a declaration, pursuant to section 327(e)and Bankruptcy Rules 2014(a)and 2016.[39]  Among other things, Mr. Ramsey attests that R&E holds a total of $2,307.248.04 in its client trust account as of the Petition Date, which constitutes the Funds, plus $756,499.22 for prepayment of restitution in the Criminal Case.[40]

---

[37] <u>Id.</u>, ¶ 11.

[38] <u>Id.</u>, ¶ 14.

[39] Dkt. 37 ("<u>Mr. Ramsey's Declaration</u>").

[40] <u>Id.</u>, ¶ 16.

He further states that R&E would not bill the estate on an hourly basis for its services but would rely upon the Funds in its client trust account for future payment.[41]

Mr. Ramsey's Declaration also indicates, however, that R&E might apply to the court for the reimbursement of actual, necessary expenses incurred post-petition, in accordance with section 330, and that R&E intends to file a proof of claim for the remaining balance of its Flat Fee, or $3,449,251.18.[42]

Upon objection by the United States Trustee and others, the Application was withdrawn.  Mr. Levandowski then retained R&E in his personal capacity, and despite his formal entry of a guilty plea on August 4, 2020, R&E apparently expects to continue to represent him at least through his February 2021 status hearing regarding his self-surrender date.[43]

In the Motion, R&E asks the court for relief under sections 362(d)(1) and (2), Bankruptcy Rule 4001(d), and B.L.R. 4001-1 and 9014-1(b)(3).

---

[41] Id., ¶ 17.

[42] Id.

[43] See Dkt. 267, p. 9; see also Dkt. 267-1, Ex. B.

**C. ANALYSIS**

**1. The Stipulation and Relief Requested.**

In its Motion, R&E asks the court to approve the Stipulation and to enter an order that "authorizes the transfer of the [Funds] from the firm's client trust account to the firm's operating account at the conclusion of the criminal matter."[44] By its express terms, however, the Stipulation provides for much more, including that:

(1)    R&E has fully performed its representation obligations upon the sentencing of Mr. Levandowski;

(2)    R&E will have fully earned the entirety of the Flat Fee as of the sentencing of Mr. Levandowski;

(3)    R&E's interest in the Flat Fee and the balance of the Funds will become fixed, undisputed and fully earned as of the sentencing of Mr. Levandowski;

(4)    The Funds are not property of the bankruptcy estate and are not subject to the automatic stay; and

(5)    To the extent the automatic stay applies, relief from stay is granted to allow the transfer of the Funds to R&E's operating account.

---

[44] See Dkt. 161, p. 2.

Notwithstanding the scope of the relief afforded by the Stipulation, R&E maintains that its Motion is focused on the transfer of Funds, so that it may comply with the requirements of CRPC Rule 1.15. [45]  It insists that it filed the Motion solely "[i]n the interest of full transparency and in an abundance of caution," to confirm with this court that such a transfer would not be in violation of the automatic stay.[46]

Uber and Google ask that the Motion and R&E's request to transfer the Funds be denied.  Uber and Google represent that they do not oppose R&E being paid fully and fairly for its services but ask the court to recognize that the Funds are property of the estate and subject to a section 329 reasonableness review.

R&E has replied that its request is "exceedingly narrow," and that it seeks only to comply with CRPC Rule 1.15(c) by timely removing earned fees (the Funds) from its client trust account. In fact, R&E specifically states:

> And it [the approval of the Motion] in no way
> precludes Uber or Google from later filing a proper
> motion under section 329 or 502(b)(4) to seek this
> court's review of the "reasonableness" of the flat fee
> retainer funds the Debtor paid to R&E pre-petition (or
> the larger unsecured amount he is still obligated to
> pay under the terms of the Engagement Agreement).
> They simply need to do so through a noticed motion
> properly filed under Bankruptcy Rule 2017 . . .

---

[45] See Dkt. 161, p. 12.

[46] Id.

> All R&E seeks here is a 'comfort order' confirming
> that R&E may transfer the prepetition advance retainer
> funds . . . without running afoul of the automatic
> stay.[47]

Despite this apparent recognition by R&E that this court may

undertake a review of the reasonableness of R&E's proposed

compensation in its Motion, the Stipulation itself appears to

attempt to foreclose such a review, as it provides that the Funds

are fixed, undisputed, and have been fully earned, are not

property of the estate, and thus, not subject to review by this

court pursuant to section 329 and Bankruptcy Rule 2017.

**2. Classification of the Retainer and CRPC Rule 1.15.**

In its Motion, and according to the Engagement Agreement,

R&E asserts that its compensation is based on a "flat

fee/advanced payment retainer," and that, therefore, the Funds

are not property of the bankruptcy estate.  It relies on CRPC

Rule 1.15(e), which provides that:

> A lawyer may make an agreement for, charge, or collect
> a flat fee for specified legal services. A flat fee is
> a fixed amount that constitutes complete payment for
> the performance of described services regardless of
> the amount of work ultimately involved, and which may
> be paid in whole or in part in advance of the lawyer
> providing those services.[48]

---

[47] Dkt. 195, p. 1.

[48] CRPC Rule 1.15(e).

CRPC Rule 1.15 sets forth an attorney's duties regarding safekeeping of funds and property of clients and other persons. Pursuant to CRPC Rule 1.15(a), all <u>advance payments</u> for fees, costs, and expenses <u>must be deposited into a trust account</u>. Pursuant to CRPC Rule 1.15(b), a <u>flat fee advance can be placed in a lawyer's operating account</u> if the lawyer discloses to the client in writing that: (1) the client has the right to have the flat fee advance placed in a trust account <u>until the fee is earned</u>; and (2) the client is entitled to a refund of any amount of the fee that is unearned because the services were not completed.[49]

R&E points to CRPC Rule 1.15 as setting forth a requirement to timely transfer the "fully earned" Funds. R&E admits that it placed the Funds into the client trust account and that Mr. Levandowski would be entitled to a refund of any fees that were not earned. It maintains, however, that it has fully earned the Funds, as verified by the Motion, the Stipulation, and Mr. Levandowski's supporting declarations.[50]

Initially, even if the limited purpose of the Stipulation and Motion was to comply with a requirement that earned funds

---

[49] CRPC Rule 1.15(b)(1) (<u>emphasis added</u>).

[50] <u>See</u>, <u>e.g.</u>, Dkt. 265.

be removed from a client trust account, CRPC Rule 1.15(c)(2)

provides that:

> [I]f a client or other person disputes the lawyer or
> law firm's right to receive a portion of trust funds,
> the disputed portion shall not be withdrawn until the
> dispute is finally resolved.[51]

Uber and Google challenge R&E's characterization of the Flat

Fee based upon its actual treatment by Mr. Levandowski and R&E,

which they argue indicates that it was more in the nature of a

security retainer.  Uber and Google first note that R&E is

seeking an order affecting more than just the Funds in trust by

asking for a judicial determination that the entire Flat Fee was

fully earned.  They point out that Mr. Levandowski never

completed the payments contemplated by the Engagement Agreement,

and that thus, his performance does not satisfy the requirement

of a deposit of a Flat Fee that was fully earned.

Next, Uber and Google point out that R&E did not treat the

payments it received as prepayments of the Flat Fee.  R&E did not

previously place any portion of those payments into its operating

account as an indication that they had been earned.  Instead, R&E

placed the Funds into a client trust account until they were

determined to be "fully earned," with the expectation that any

unearned fees would be returned.  The failure to treat the

---

[51] CRPC Rule 1.15(c)(2).

1    payments as earned prior to the Petition Date indicates that the

2    Funds are more like a security retainer, which is frequently held

3    to be property of the estate.[52]

4        R&E cites to several cases in arguing that retainers

5    characterized as flat fee or advance payment retainers were

6    earned upon receipt and, therefore, not property of the

7    bankruptcy estate.  That authority, however, involved an

8    examination of the true nature and application of the retainer,

9    and in many instances determined the retainer was more in the

10   nature of a security retainer to be held until the fees were

11   earned.[53]

12

13       Precedent makes clear that the court must look to the nature

14   of the Flat Fee to determine Mr. Levandowski's interest, and thus

15   the estate's interest, in the Funds as of the Petition Date.  And

16   the court concludes that, despite the language of the Engagement

17   Agreement, it is apparent that the actual treatment of the

18   payments, which assumed that any unearned fees would be refunded

19

20

21

22

23   _____

     [52] See In re Blackburn, 448 B.R. 28, 35 (Bankr. D. Idaho 2011).

24

25   [53] Id. at 35 ("To determine the extent of Debtor's interest in the retainer at
     the time of filing, and thus the estate's interest, the Court must first
     determine the nature of the retainer at issue."); see also White v. Coyne,
26   Schultz, Becker & Bauer (In re Pawlak), 483 B.R. 169, 176 (Bankr. W.D. Wis.
     2012) (holding that whether a flat fee retainer paid to law firm in days
27   immediately preceding their bankruptcy filing was included in "property of the
     estate" depended upon whether debtors had any retained interest in retainer
28   when their petition was filed).

to Mr. Levandowski, means the Funds remain property of the
bankruptcy estate.

Uber and Google also point out two additional timing
concerns, both of which support this conclusion.  First, the
position of R&E that the Funds have been "fully earned" and are
now R&E's property could not be true if its engagement
continues.  This appears to be the case, given R&E's
representation that it will continue to represent Mr.
Levandowski through his February 22, 2021 hearing concerning
his surrender for imprisonment.

On the other hand, they observe that the original term of
active representation upon which the Flat Fee was based was
expected to be eighteen months, but in fact, the actual active
representation covered only four months (if measured by the
guilty plea), or seven months (if measured by the sentencing
date).  Those facts alone give rise to a need for a review of
the Flat Fee.

But in addition, Mr. Levandowski sought to employ R&E in
this bankruptcy case and toward that end, attested that the
firm's employment related to this case.[54]  Had it been employed
by this estate, the court would have been required to review
R&E's fees.  Mr. Levandowski also attested that R&E's services

---

[54] See Dkt. 265.

would benefit the estate because R&E would attempt to obtain approval of a reduced restitution payment, which would increase his distribution to creditors, and would try to reduce Mr. Levandowski's prison sentence, which would permit him to work and contribute his post-petition earnings (which are property of the estate) to his creditors.[55]

Still further, both Mr. Levandowski and R&E (in its Bankruptcy Rule 2014(a) declaration) stated an intention to submit a proof of claim for the more than $3,300,000 that Mr. Levandowski has not yet paid, a claim also subject to the court's consideration, assuming it draws an objection.[56]

Considering the dispute raised by Uber and Google regarding the determination of what fees have been earned and whether the fees are reasonable, along with R&E's expectation that, despite its failure to timely file a proof of claim, Mr. Levandowski intends to amend his schedules and statements to provide for the full balance of the retainer as an undisputed debt, it appears appropriate for this court to determine whether there are unearned fees due to Mr. Levandowski's estate and whether the compensation is reasonable.

---

[55] <u>Id.</u>, ¶ 14.

[56] <u>Id.</u>, ¶ 18; Dkt. 37, ¶ 17.

**3. Reasonableness Review under section 329.**

Regardless of the determination of the nature of the Flat Fee or whether the Funds are property of the bankruptcy estate, the court finds that it has the authority and the obligation to review the reasonableness of R&E's fees and of the Engagement Agreement pursuant to section 329, by requiring R&E to file an application under Bankruptcy Rule 2017.

Section 329(b) provides that an attorney for a debtor seeking payment of fees under an agreement made within a year before the petition date must establish that the proposed fees do not exceed the "reasonable value of any such services."[57]

The record before the court establishes that the bankruptcy and R&E's representation of Mr. Levandowski arise from the same set of facts; namely, Mr. Levandowski's actions with respect to Google and Uber.  Mr. Levandowski's theft of trade secrets, during his employment at Google and his subsequent employment by Uber, led not only to the $170.0 million arbitration award that precipitated this bankruptcy, but also to the criminal referral by the judge presiding over the Waymo Litigation, to Mr. Levandowski's indictment, and ultimately, to his new fee agreement with R&E.  These events are connected at their very core.

---

[57] See In re Perrine, 369 B.R. 571, 580-81 (Bankr. C.D. Cal. 2007).

That interrelationship and connection are further demonstrated by Mr. Levandowski's declaration submitted in support of his Application to hire R&E as special counsel in this bankruptcy case under section 327(e).[58]  The fact that he ultimately withdrew the Application does not negate the underlying intent or truthfulness of the sworn declarations.

The timing of R&E's new Engagement Agreement, which is the subject of R&E's Motion and required either a full advance payment or security deposits in the amount of a $4.0 million on the eve of the bankruptcy filing, also clearly indicates that the services and payments contemplated by the revised agreement were "in contemplation of or in connection with" the bankruptcy.

R&E began representing Mr. Levandowski in May 2017 and billed its fees on an hourly basis for several years.  Following the Arbitration award and criminal indictment, it became clear that a bankruptcy filing was imminent.  At that point, and apparently concerned that Mr. Levandowski might become unable to pay his bills, R&E required a switch from the prior hourly billable relationship to the Flat Fee or third party guaranteed hourly payment arrangement in order to continue its representation.

---

[58] Dkt. 36.

When faced with the possibility of losing the criminal counsel upon which he had relied for nearly three years, it is easy to see that Mr. Levandowski had little choice but to concede to R&E's demand.  The fact that Mr. Levandowski "chose" the Flat Fee option is of no consequence; he was likely forced to that conclusion by his inability to find a willing third-party source for a $4.0 million deposit.  In any event, the record shows that he failed to comply with the installment payment requirements of the Flat Fee option, including the deposit of $250,000 for costs and expenses.  R&E did not draw on any amounts as earned and placed all payments into the client trust account, strongly signaling that these funds are property of the bankruptcy estate.

The events that occurred here are exactly the type that section 329 was intended to address – where a debtor who has little leverage must concede to an attorney's demand for payment in light of a pending bankruptcy.  Section 329 provides the court with a one-year reach-back to examine the reasonableness of such fee agreements and payments in order to preserve assets which might be available to the estate.

The most analogous caselaw presented by the parties indicates that bankruptcy courts do not limit the application of section 329 solely to the attorney representation during the filing or administration of the bankruptcy case.  Courts have held that the nature of the service does not matter to the

application of the statute and have found that a connection between criminal representation and the bankruptcy case justifies the application of section 329.

Google and Uber cite to In re Rheuban as illustrative of this point.[59]  Rheuban involved compensation to criminal counsel for representation in connection with possible criminal and regulatory violations arising out of the debtor's business relationship with a troubled savings and loan.  The debtor controlled the troubled savings and loan, which had been placed into receivership by a resolution trust corporation and was under investigation by the FBI.

The investigation focused on the debtor's business relationship with the savings and loan.  The debtor retained criminal counsel to assist with the investigations.  At first, debtor's criminal counsel billed on an hourly basis, but the arrangement switched to a "flat non-refundable fee" of $1.5 million plus any "independent" costs and expenses for court fees, investigator fees, expert fees, and for the hiring of "any persons possessing special skills or expertise [who were] not employees of the firm".[60]  The parties agreed that "under no

---

[59] In re Rheuban, 121 B.R. 368 (Bankr. C.D. Cal. 1990).

[60] Id. at 374.

circumstances would [the client] be entitled to the return of any portion of the [Fee]".[61]

On the day before the bankruptcy filing, the debtor paid over $763,754 in cash, and facilitated the transfer of real property he once owned, to criminal counsel, describing these transfers as "an earned upon receipt" retainer to compensate the law firm.  Criminal counsel represented the debtor in "interfacing" with the U.S. Attorney's office and savings and loan regulators and continued to assist the debtor post-petition, even advising the debtor on his 5th amendment rights associated with his meeting of creditors, but never sought employment under section 327 or disclosed their compensation under section 329.

In finding that the fees paid under the earned upon receipt retainer were subject to review pursuant to section 329, the Rheuban court found that the services rendered by criminal counsel in that case were "in connection" with the bankruptcy case because the agreement to provide legal services arose out of the debtor's business relationship with the savings and loan, which was the focus of the regulatory and criminal proceedings.[62] The debtor's serious financial problems were in part due to the same investigations, which undoubtedly would have an impact on

---

[61] Id.
[62] Id.

the bankruptcy case.   The Rheuban court also found it significant that, at the time the debtor entered into the retainer agreement and paid the fee, he was contemplating bankruptcy.[63]

Google cites to Rheuban for its argument that courts applying section 329 to criminal defense attorney fees have found that "[i]t is especially important for the attorney to make a strong showing of reasonableness of the compensation when the services are for criminal defense because it is unlikely that the creditors of the Debtor are liable to receive any benefit from such services."[64]

Rheuban also cited to Conrad,[65] the hallmark case setting forth the policy considerations behind section 329 (and its predecessor statute, section 60d of the Bankruptcy Act).   Conrad ordered the turnover of $2000 that had been paid by the debtor to counsel prepetition, for services related to negotiating with creditors for an extension or creditor supervision of operations shortly before the filing of an involuntary petition.

The Court noted that the services were procured at a time when the debtor was contemplating bankruptcy, and described the policy concerns as follows:

---

[63] Id.

[64] Id. at 385.

[65] Conrad, Rubin & Lesser v. Pender, 289 U.S. 472 (1933).

The manifest purpose of the provision is to safeguard the assets of those who are acting in contemplation of bankruptcy. . . and to provide a restraint upon opportunities to make an unreasonable disposition of property through arrangement for excessive payments for prospective legal services.[66]

The Court held that the statute is not restricted by "the specific nature of the legal services to be rendered," but whether "the payment or transfer to provide for them is made 'in contemplation' of bankruptcy."[67]  The Court set forth the test for "in contemplation:"

[T]he controlling question is with respect to the state of mind of the debtor and whether the thought of bankruptcy was the impelling cause of the transaction. If the payment or transfer was thus motivated, it may be re-examined, and its reasonableness determined.[68]

"Impel" means "to urge to action through moral pressure; to drive forward".[69]  In the instant case, it appears clear from the Mr. Levandowski's Declaration that the prospect of bankruptcy was the cause of the switch from an hourly billable arrangement to a flat fee/advanced payment retainer, as well as the demand that fees be paid pre-petition for all future work.

In another more recent case with similar facts, the court examined the application of section 329 to a flat fee prepetition

---

[66] Id. at 476-77.

[67] Id.

[68] Id. at 477.

[69] See American Heritage Dictionary 709 (3d ed. 1992)

retainer paid to criminal counsel.[70]   The debtor was the chief
executive officer of a financial corporation that owned a savings
and loan.[71]   On the date the debtor was first identified as "the
central figure" in the financial problems of the savings and
loan, he hired criminal counsel to assist with "all criminal
matters which might arise out of his connection" with the
financial corporation and savings and loan investigations for a
flat fee of $450,000.[72]   A month later, the engagement agreement
was modified to provide a cash payment of $200,000 and conveyance
of certain art objects valued at $100,000 as "payment in full"
and not to secure payment or for antecedent debt. At the time of
the agreement and payment, no criminal charges were pending, and
the services were considered primarily prospective.

The court found that, when criminal counsel received the
money and art from the debtor, it knew of the proposed bankruptcy
and all were concerned that debtor's assets would shortly be
seized by the government.  Within four months of the agreement,
the debtor filed a voluntary Chapter 11 petition, but was not
indicted for nearly three years.  Rather than consider the
adversary proceeding seeking to recover the fee as a fraudulent

---

[70] <u>Wooton v. Ravkind (In re Dixon)</u>, 143 B.R. 671 (Bankr. N.D. Tex. 1992),
<u>aff'd</u>, 85 F.3d 626 (5th Cir. 1996).

[71] <u>See id.</u>

[72] <u>Id.</u> at 674.

transfer, the court reviewed the reasonableness of the fees *sua sponte*, under section 329 and Bankruptcy Rule 2017. The court relied upon the holdings in Conrad and In re Wood[73] in ruling that:

> Notwithstanding the fact that [criminal counsel] did not represent [debtor] in his Chapter 11 proceeding, [counsel's] fee arrangement is subject to scrutiny under section 329(b) of the Code. Moreover, the fact [debtor and counsel] treated the retainer as a flat fee does not limit the court's authority to review the reasonableness of the arrangement.[74]

"The statutory provisions are unambiguous. Attorney's fees are subject to review by the court notwithstanding the terms of any fee arrangement."[75]

Like the facts here, Dixon found the actions of the debtor to be the simultaneous cause of both his financial problems and resulting bankruptcy case and of his need for criminal representation. The timeline of events provided a clear connection between the retention of criminal counsel and the commencement of the bankruptcy case.

Google also cites to In re Perrine to support its argument that a showing of reasonableness is also required under section

---

[73] 210 U.S. 246 (1908).

[74] Dixon, 143 B.R. at 677.

[75] Id. at 675.

329, when a debtor's attorney receives a pre-petition retainer and applies it to antecedent debt and to non-bankruptcy work.[76]

In Perrine, the court determined that a debtor's transfer of property valued at $30,000 ninety-six days before the filing of the bankruptcy petition was "made in contemplation of or in connection with" the debtor's bankruptcy case, and held that "Congress intended to permit bankruptcy courts to reexamine the reasonableness of fees within the one-year look back period, irrespective of the nature of the services rendered."[77]  The court recognized that the subjective inquiry is whether the services and payments agreed to by the debtor were influenced by the possibility or imminence of bankruptcy.[78]  Debtor's counsel attributed all but $3,000 to pre-petition work, including litigation with debtor's primary creditor and also failed to file the proper disclosure with the court.  The court applied section 329 and disapproved the fees.

Finally, even if a prepetition retainer is actually in the nature of a flat or earned fee that might not be considered

---

[76] 369 B.R. 571 (Bankr. C.D. Cal. 2007).

[77] Id. at 580 (internal citations omitted).

[78] Id. (emphasis added) (internal citations omitted).

property of the estate, it still falls within the purview of section 329.[79]

   In Lamie, the Supreme Court primarily determined that an attorney for a chapter 7 debtor could not be paid from property of the estate under section 330(a)(a) unless employment had been approved under section 327.[80]   The Court recognized an exception, though, noting that section 330(a)(1) does not prevent a debtor from engaging counsel before a Chapter 7 case and paying a flat fee for compensation earned prepetition to ensure the filing is correct.   The Court expressly found that, even in cases involving an allowed flat fee, a debtors' attorneys must disclose fees they receive from a debtor in the year prior to its bankruptcy filing and that courts may order excessive payments returned to the estate.[81]

---

[79] See, e.g., Pawlak, 483 B.R. at 181 ("an attorney who ended up doing nothing in exchange for a sizable flat fee might technically be the owner of the money at the time of filing, but the amount of compensation would inevitably face heavy scrutiny under section 329(b)").

[80] Lamie v. United States Tr., 540 U.S. 526 (2004).

[81] Id. at 537-538. See also, Danner v. United States Tr. (In re Danner), 2012 WL 3205242(9th Cir. BAP 2012) (holding that an advance payment retainer if not treated as earned on receipt is not considered the attorney's property until it is actually earned, citing Idaho Professional Conduct Rule 1.15(c)); In re McDonald Bros. Constr. Inc., 114 B.R.989 (Bankr. N.D. Ill., 1990) (holding that an advance payment retainer is not property of the estate but is still subject to court review for excessiveness under section 329; In re Alvarado, 496 B.R.200 (N.D. Cal. 2013) (holding that bankruptcy court had the authority to order disgorgement of fees paid to Chapter 7 debtors' attorney as exceeding reasonable value of attorney's services, notwithstanding the prepetition fee payments were in the nature of advance payment retainers not included in bankruptcy estate.).

Following the reasoning in <u>Lamie</u>, the <u>Pawlak</u> court more recently recognized that:

> It is important to note that regardless of the nature of the fee under state law, the manner in which an attorney collects the fee for services in bankruptcy is simultaneously regulated by the code.[82]

Based upon its reading of <u>Lamie,</u> the court held that courts have "a need and a right" to full, unfettered disclosure of all fee and financial arrangements between debtors and their attorneys.[83]  The underlying purpose of the disclosure requirements is to police "potential for overreaching" by debtors' counsel, and full disclosure provides an opportunity for all interested parties to review and object to any unreasonable fees.[84]  The court is the watchdogs of that process.

These cases and others make clear that the Bankruptcy Code contemplates fee agreements like the one at issue in this case, and that section 329 authorizes bankruptcy courts to analyze the reasonableness of fees paid pursuant to such agreements and to order excessive payments returned to the estate.

**D. CONCLUSION**

---

[82] <u>Pawlak</u>, 483 B.R. at 178.

[83] <u>Id.</u>

[84] <u>Id.</u>

1    For the foregoing reasons, the court sustains the objections

2  filed by Google and Uber.  R&E's Motion to approve the

3  Stipulation is **DENIED WITHOUT PREJUDICE** to R&E filing an

4  application seeking approval of its fees.  Any such application

5  shall comply with applicable law, as well as with the court's and

6  the United States Trustee's guidelines.

7

8

9                      **\*\*END OF ORDER\*\***

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## Court Service List

[None]

MILES EHRLICH, State Bar No. 237954
miles@ramsey-ehrlich.com
ISMAIL RAMSEY, State Bar No. 189820
izzy@ramsey-ehrlich.com
AMY CRAIG, State Bar No. 269339
amy@ramsey-ehrlich.com
KATHARINE KATES, State Bar No. 155534
katharine@ramsey-ehrlich.com
RAMSEY & EHRLICH LLP
803 Hearst Avenue
Berkeley, CA 94710
Telephone: (510) 548-3600
Facsimile: (510) 291-3060

## UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>ANTHONY SCOTT LEVANDOWSKI,<br><br>        Debtor. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

**AMENDED NOTICE OF MOTION FOR LEAVE TO APPEAL BANKRUPTCY COURT'S ORDER DENYING RAMSEY & EHRLICH LLP'S MOTION FOR APPROVAL OF STIPULATION WITH DEBTOR;**

*Motion for Leave to Appeal from* BANKRUPTCY CASE NO.: 20-30242 (HLB) Chapter 11

AMENDED NOTICE OF MOTION FOR LEAVE TO
APPEAL ORDER DENYING RAMSEY & EHRLICH'S
MOTION FOR APPROVAL OF STIPULATION;
BANKR. CASE NO.: 20-30242 (HLB)

1

### AMENDED NOTICE OF MOTION

2

    **PLEASE TAKE NOTICE** on December 3, 2020, the Northern District Bankruptcy Court

3
by the Honorable Hannah L. Blumenstiel, issued an order entitled "Order Denying Ramsey &
Ehrlich LLP's Stipulation with Debtor." Bankruptcy Case No. 20-30242, Docket No. 313, (HLB)

4
(Chapter 11).

5
    **PLEASE TAKE FURTHER NOTICE** that pursuant to 28 U.S.C. § 158(a)(1) and (3) and

6
Federal Rules of Bankruptcy Procedure 8003 and 8004, Ramsey & Ehrlich, LLP ("R&E"), has
filed a motion for leave to appeal that Order, entitled "Notice of Motion and Motion for Leave to

7
Appeal Order Denying Ramsey & Ehrlich LLP's Stipulation with Debtor; Memorandum of Points
and Authorities" (the "Motion") on December 17, 2020. Dkt. No. 351. The Motion accompanies

8
R&E's Notice of Appeal and Statement of Election, filed on December 17, 2020 at Docket No.

9
350, in which R&E elected to have the Motion heard by the District Court.

10
    **PLEASE TAKE FURTHER NOTICE** that this Amended Notice of Motion is now being
filed as a separate document, in accordance with the rules of the Northern District Bankruptcy

11
Court, after mistakenly being filed as one document with the Memorandum.

12
    **PLEASE TAKE FURTHER NOTICE** that the Motion may be heard by the United

13
States District Court of the Northern District of California at a date and time to be yet to be set and
before a judge yet to be determined by the District Court. Pursuant to the Federal Rule of

14
Bankruptcy Procedure 8004(c)(3), however, any relief requested in the Motion may be granted
without a hearing.

15
    **PLEASE TAKE FURTHER NOTICE** that, pursuant to Federal Bankruptcy Rule of

16
Procedure 8004(b)(2), any oppositions or responses to the Motion must be in writing, filed with
the District Court, and served on R&E so as to be received on December 31, 2020. Any

17
oppositions or responses must also be filed and served on all the parties reflected in the Notice of

18
Appeal.

19
    **PLEASE TAKE FURTHER NOTICE** that copies of the Motion and its supporting

20
papers can be viewed and/or obtained: i) by accessing the Bankruptcy Court's website at
http://www.canb.uscourts.gov, (ii) by contacting the Office of the Clerk of the Court at 450

21
Golden Gate Avenue, San Francisco, CA 94102. Note that a PACER password is needed to
access documents on the Bankruptcy Court's website.

22

23
Dated:  December 18, 2020           Respectfully submitted,

24
                      RAMSEY & EHRLICH LLP

25
                      By:  /s/ _____

26
                         Miles Ehrlich

27

28

            -1-

99